# STATE OF MARYLAND *v.* JAMES ISAAC MAYES, JACQUELYN (NMN) MAYES AND JOHN WHILEY GOODING

[No. 1247, September Term, 1977.]

*Decided June 14, 1978.*

The cause was argued before LOWE, MELVIN and MACDANIEL, JJ.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, Arthur A.*

*Marshall, Jr.*, State's Attorney for Prince George's County, and *Robert C. Bonsib*, Assistant State's Attorney for Prince George's County, on the brief, for appellant.

*Fred Warren Bennett*, with whom were *Goldstein, Ahalt, Glassman & Bennett, Chartered* on the brief, for appellees James Isaac Mayes and Jacquelyn (NMN) Mayes. *Alan J. Goldstein*, with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* on the brief, for appellee John Whiley Gooding.

LOWE, J., delivered the opinion of the Court.

How beguilingly simple the question posed by the State appears in its appeal from the dismissal of an indictment by the Circuit Court for Prince George's County:

> "Was it error for the trial court to dismiss the indictments returned against the Appellees?"

Were it not necessary to raise, then exorcise, tangential procedural and constitutional spectres, our negative response to that question could be commensurately terse. This would hardly displease the parties whose concern must be more with our conclusions than with why we arrived at them; however, we also write in a shadow portending review. While our reasons may be of sparse educational benefit to bench or bar generally, the Court of Appeals quite properly is concerned not only with why we have reached the result, but how it is we were able to consider the State's appeal at all.

The case concerns a wiretap authorization to intercept communications relating to drug and gambling transactions, signed by Judge William B. Bowie on October 27, 1976, from which later flowed affidavits which, in turn, gave rise to search warrants issued on November 19, 1976. Based upon evidence thereby seized, indictments were returned against appellees by the Prince George's County Grand Jury on March 23, 1977.

A proliferation of motions were filed by the appellees, including a motion to suppress the evidence, which was denied

by Judge Howard S. Chasanow on August 18, 1977.[1] At that hearing, appellant apparently raised an issue of the interpretive scope of Judge Bowie's wiretap authorization. Judge Chasanow declined at that juncture to rule on the issue,[2] but suggested that the State might consider a petition, pursuant to 18 U.S.C. § 2517 (5), (Md. Code, Cts. Art., § 10-407 (e)), for authorization to use those conversations "if", as explained by the State, "they were not covered by the original order".

Generally, § 2517 (and Cts. Art., § 10-407) provides,[3] among other things, when and how wire and oral communications interceptions may be authorized and, if properly intercepted, when, where and how the communications may be disclosed. (*E.g.,* in any court or grand jury proceeding.) Subsection (5) of that section provides that when officers intercept communications relating to offenses *other* than those provided for in the authorization order, such *ultra vires* evidence so obtained may still be disclosed in a judicial proceeding, but only when approved on subsequent application to a court, which "application shall be made as soon as practicable".

Turning now to the facts of the instant case, we find the State's § 2517 (5) petition, heard before Judge Bowie, succinctly set forth the chronology of significant events.

"1. On October 27, 1976 the Honorable William Bowie signed an Order under Miscellaneous No. 745 which authorized the interception of telephonic communications over the telephone number 449-4447 relating to the crimes of illegal sports bookmaking and narcotics and conspiracy to commit same.

2. That said Order was executed between October 28, 1976 and November 18, 1976 during which time conversations were intercepted relating to violations

---

1. It should be chronologically noted that Maryland's new "Wiretapping and Electronic Surveillance Law" became effective on July 1, 1977, prior to this hearing.
2. The record does not reveal why Judge Chasanow declined to decide this question.
3. 18 U.S.C. § 2517 and Cts. Art., § 10-407 are appended.

of the controlled dangerous substances laws relating to Marihuana and Phencyclidine, violations of the gambling laws (Article 27, Sections 237-242) and conspiracy to commit said offenses.

3. That on August 16-18, 1977 before the Honorable Howard Chasanow, a motion to suppress evidence obtained as a result of that wiretap was heard, and said Motion to Suppress was denied. During that hearing, however, Judge Chasanow indicated that the State should consider filing an application to the issuing judge to authorize the use at trial of conversations relating to violation of the controlled dangerous substances laws other than just narcotics (to wit: Marihuana and Phencyclidine) and violations of the gambling laws other than just illegal sports betting."

Before reaching the question whether the *post prolem suscitatam* application was timely sought, Judge Bowie recognized [4] that he had to decide whether his original order to intercept was intended to comprehend conversations of *any* drug related offenses, including marijuana and phencyclidine, or whether the parenthetically descriptive term "narcotics" which followed the generic description of "controlled dangerous substances" in his order (and the supporting affidavit) modified that which it described, *i.e.,* in the nature of an *ejusdem generis* interpretation. The same problem of scope arose in regard to conversations of gambling violations since the order and affidavit permitted interceptions of conversations relating to "illegal sport betting", whereas conversations of other gambling activities were received. *(E.g.,* numbers.)

---

4. "It seems to me that in order to entertain a decision on this petition we would first have to determine what the original order intended according to its clear wording.

. . .

We feel that it is necessary for us to make this determination in order that we even entertain the petition that is involved here, because the petition asked that certain conversations that went on during the wire tap be expanded to include controlled dangerous substances, marijuana and PCP. Another perhaps concerning sports bookmaking."

After analyzing his order, which he described as "inartfully drawn", Judge Bowie declared that:

" ... our view is that the nub of the order is illegal sports bookmaking and narcotics laws and would not under its precise terms include non-narcotic controlled dangerous substances, such as marijuana and PCP."

He then decided that the § 2517 (5) (Cts. Art., § 10-407 (e)) petition filed on August 29, 1977, for permission to disclose the *ultra vires* interceptions which had been taken between October 28, 1976 and November 18, 1976, did not comply with the statutory prerequisite that such application be made "as soon as practicable". Not only had nine and one-half months elapsed before permission was sought, but the information had already been disclosed to the grand jury and indictments rendered thereon. The State did not appeal from that denial of its application for an order of approval pursuant to Cts. Art., § 10-408 (i) (3).

Appellees immediately filed a "Motion to Suppress Evidence and to Dismiss Indictment", reciting all that had transpired, culminating in Judge Bowie's denial of the State's petition. They argued that because all of the evidence (even that seized under search warrant) had been derived from interception of conversations now judicially declared to be related to offenses other than those authorized to be intercepted (which could not now be disclosed in any proceeding), *all* such evidence "must" be suppressed as to any further proceeding, and, since it had already been disclosed to the grand jury in the obtention of the indictments, the indictments should be dismissed.

At the hearing upon this dual motion heard by Judge Chasanow, the State conceded that the indictments in question were based (or might have been based) upon conversations relating to the marijuana and PCP "other offenses".[5] Judge Chasanow held that he was "bound" by Judge Bowie's ruling

---

5. "*At* the November 2, 1977, hearing the State conceded that as to indictment 17,837, Counts II through 34 would be based on

> "that any conversations with regard to PCP, marijuana and nonsports bookmaking, gambling, were not properly utilizable by the State."

Judge Chasanow then held that since Judge Bowie had ruled that disclosure would be statutorily proscribed, the prior admitted disclosure to the grand jury had been in violation of § 2517 and § 2515 of Title III (and its subsequently adopted State counterparts, Cts. Art., § 10-407 and § 10-405).

Presumably in hopes of avoiding obstacles which it has no desire to encounter, the State asks us to *dos à dos*[6] from Judge Chasanow's dismissal (from which it appealed) to Judge Bowie's disclosure denial (which it did not appeal), taking Judge Bowie's suppression reasoning, and returning it by imputation to Judge Chasanow in order to obtain a review of discretion. Without so much as a backward glance, while attacking Judge Bowie's reasoning through the pattern of adoption by Judge Chasanow, the State asks us not to consider that the dismissal followed in the wake of the course the State sought originally to pursue by its petition, because it now believes such petition was unnecessary in the first instance.

While discouraging us from dancing to the State's tune, appellees suggest a somewhat awkward two-step of their own. They contend that there was a right of appeal by the State from its denial because the ruling was a "final judgment" in a "noncriminal case", citing as authority several civil cases in which the State's right (and collateral duty) to appeal was discussed. However, appellees' argument is founded entirely upon the presupposition that because the petition was clerically numbered as "Misc. No. 745", it was a separate and different proceeding from the criminal case at bar.

conversations relating to marijuana and PCP. As to indictment 17,838 counts 10, 11 and 12 were so based. As to indictment 17,842, counts 5 through 10 and counts 12 and 13 were so based. The State further admitted that the remaining counts in each indictment might have been affected by the wiretap conversations, at least insofar as the Grand Jury's considerations were concerned."

6. "Back to back". A square dance movement during which the dancers approach each other from opposite lines, circle back to back and return to their original positions.

The "Miscellaneous" designation is first applied to the State's petition for authorization to wiretap, and, since the case is still in its investigatory stage, a more formal criminal case designation is neither available nor appropriate. For obvious reasons of preliminary confidentiality (see then applicable Cts. Art., § 10-405, repealed Ch. 692, Acts of 1977), the case is entitled "Miscellaneous # ____ versus Petition in the Matter of the Application of [the State's Attorney]". The investigatory stage is usually still prevalent at the time of a subsequently sought disclosure under § 2517 (5) (Md. Code, Cts. Art., § 10-407 (a)). The "Miscellaneous" designation is nothing more than a clerical procedure for keeping track of a non-public, preliminary, court-authorized criminal investigatory procedure which may, or may not, culminate in a criminal case, but can hardly be called a "non-criminal case". Here, however, the delay in seeking § 2517 (5) disclosure is emphasized by the interim indictment of appellees before permission was obtained to disclose that upon which the indictment had been obtained; as a result, a case which would have been in the investigatory stage under ordinary circumstances (and thus appropriately designated "Miscellaneous"), had already ripened into a criminal case.

The underlying premise of appellees, that the State had a right to appeal, is correct, however. Maryland's new wiretap law provides in Cts. Art. § 10-408 (i) (3) that:

> "In addition to any other right to appeal, the State shall have the right to appeal from the denial of an application for an order of approval, if the prosecuting attorney shall certify to the judge or other official denying the application that the appeal is not taken for purposes of delay. The appeal shall be taken within 30 days after the date the order was entered and shall be diligently prosecuted."

The effective date of the Act encompassing that section was July 1, 1977. Although the original wiretap approval in this case was prior thereto, and the interception of communications of other offenses was made prior thereto, the application for approval of its use was not filed until August

29, 1977, and denied by Judge Bowie thereafter. The State did not appeal that ruling within 30 days as it was statutorily entitled to do and is consequently bound by it. We will not review Judge Bowie's reasons denying the State's application for approval in what all parties agreed at argument to be in effect a criminal evidentiary suppression proceeding.

Judge Chasanow was thus faced with appellees' "Motion to Suppress Evidence and to Dismiss Indictment", predicated upon Judge Bowie's ruling on the State's disclosure petition. Without considering the merits of that ruling, as we have noted, Judge Chasanow stated that Judge Bowie's ruling (that wiretap evidence was obtained in violation of the authorization), was binding upon him. Md. Rule 736.f.2., by Order of the Court of Appeals, became effective on July 1, 1977 as to all cases arising thereafter, but the Order added that the rule was also to be effective as to those cases pending "insofar as practicable". It decidedly endorses the position taken by Judge Chasanow:

> "If the court grants a motion to suppress evidence, the evidence shall be excluded and shall not be offered by the State at trial, except that suppressed evidence may be used in accordance with law for impeachment purposes. If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, in the exercise of its discretion, grants a hearing *de novo* on a renewal of the motion. A pretrial ruling denying the motion to suppress is reviewable on a motion for a new trial or on appeal of a conviction."

Furthermore, the rule tacitly implies that when evidence is suppressed, the State, unlike the defendant, has no judicial discretion available for a *de novo* renewal hearing.[7] It is clear therefore that Judge Chasanow was correct in acting upon the premise that he was bound by Judge Bowie's ruling on the suppression question.

---

7. The rule, of course, does not address itself to petitions for disclosure under the wiretap statute. However, to the extent that hearings on such a petition can be analogized to a suppression hearing, as all parties in this case agreed it could, the rule would apply.

This left Judge Chasanow with but two questions before him. The first related to how much, if any, derivative evidence had been obtained by virtue of the wiretap violations which was required to be suppressed in future trials ("fruit of the poisonous tree"); the second question was what sanction he should impose for the use of the violative evidence which had already been used before the grand jury to obtain the indictments. Since dismissal of the indictments was the sanction applied for, he faced that question first, and correctly so, because if dismissal was the proper sanction, there would be no imminent trials to warrant a derivative evidence determination.

— the sanction of dismissal —

Relying on *Everhart v. State,* 274 Md. 459, the State argues that illegally obtained evidence may be considered by a grand jury (see *Bartram v. State,* 280 Md. 616), and thus illegally obtained wiretap evidence should not be precluded from its consideration. The State adds further that "no need, for prior judicial approval for Grand Jury use of wiretap evidence of unspecified offenses, is mandated by federal law." Therefore, dismissal of the indictment so obtained was improper.

Perhaps the State reads 18 U.S.C. § 2515 [8] differently, but we consider that section as an absolute bar against the use of such evidence before a grand jury.

> "*Whenever any* wire or oral *communication has been intercepted, no part of the contents of such communication* and no evidence derived therefrom *may be received in evidence in any* trial, hearing, or other *proceeding in or before any* court, *grand jury,* department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision

---

8. The indictments were obtained on March 23, 1977, approximately 3 months before the State Wiretap and Electronic Surveillance Law was to become effective. The State counterpart to § 2515 which appears in Md. Code, Cts. Art., § 10-405 is not materially different. We have appended the two sections for comparison.

thereof *if the disclosure of that information would be in violation of this chapter."* (emphasis added).

When the evidence of "offenses other than those specified in the order of authorization" was submitted to the grand jury without the prerequisite "subsequent application" required by § 2517 (5), it was done "in violation of this chapter" as proscribed by § 2515. That dismissal of the indictment obtained upon the disclosure to the grand jury of communications intercepted beyond authorized limits was the only reasonable sanction available is taught to us by example in *State v. Siegel,* 266 Md. 256, as enforced by the federal authority relied on by Judge Chasanow, *United States v. Brodson,* 528 F. 2d 214, and reinforced by *Gelbard v. United States,* 408 U. S. 41. Notwithstanding such substantive and persuasive authority,[9] common sense dictates that if we do not apply dismissal as a sanction here we will instruct the State sub silentio not to conform to Cts. Art., § 10-407 (or 18 U.S.C. § 2517 (5)) for it if *does* apply for leave to disclose to the grand jury intercepted wiretap evidence of offenses other than those authorized, that permission might be denied them and, to proceed in the face of an express court order, would be audacious advocacy and judicially dangerous. On the other hand, if permission to disclose is *not* sought propitiously, as required, its use, while possibly improper, is not yet contemptuous, and an indictment obtained thereby would not be jeopardized since the only available sanction would be a judicial "tsk-tsk".

That the Court of Appeals in *Siegel* affirmed dismissal of an indictment as a sanction, while expressly indicating that it would not abide the slightest deviation from the prescribed path of electronic surveillance in pre-intercept and intercept conditions, *Poore v. State,* 39 Md. App. 44 (1978), compels,

---

9. *But cf.* Hayward v. State, 278 Md. 654, 658, declaring generally that:

"... the proper sanction to be invoked where evidence has been seized in violation of Fourth Amendment rights is application of the exclusionary rule, not dismissal of the indictment."

rather than persuades, us that the sanction of dismissal chosen by Judge Chasanow was the proper route.[10]

We find no reason to reverse Judge Chasanow's dismissal of the indictment which was predicated upon Judge Bowie's interpretation of his authorization for electronic surveillance. We decline appellees' invitation, however, to exercise our discretion under Rule 1085 and rule upon the derivative evidence question left undecided below.

*Judgments affirmed.*
*Costs to be paid by Prince George's County.*

## APPENDIX

18 U.S.C. § 2515

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

18 U.S.C.
"§ 2517. Authorization for disclosure and use of intercepted wire or oral communications

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained

---

**10.** It does not affect our decision that Judge Chasanow was moderately influenced by extraneous reasons:

"Gentlemen, let me say this, with apologies to the appellate court, and I'm sure I'll be appropriately reminded of my obligation, I will say that I can't help but be at least minimally influenced by the fact that if by dismissing the indictment at this juncture, jeopardy clearly has not attached, not even arguably attached, that the State is not harmed because the only count that would be effected by limitations are counts that clearly the State would have no utilizable evidence on."

knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of the United States or of any State or in any Federal or State grand jury proceedings.

(4) No otherwise privileged wire or oral communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character.

(5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable."

Md. Code, Cts. Art., § 10-405

"Whenever any wire or oral communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of this State, or a political subdivision thereof if the disclosure of that information would be in violation of this subtitle."

Md. Code, Cts. Art.

"§ 10-407. Lawful disclosure or use of contents of communication.

(a) *Disclosure by investigative or law enforcement officer.* — Any investigative or law enforcement officer who, by any means authorized by this subtitle, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose the contents to another investigative or law enforcement officer to the extent that the disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(b) *Use of contents by officer.* — Any investigative or law enforcement officer who, by any means authorized by this subtitle, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use the contents to the extent the use is appropriate to the proper performance of his official duties.

(c) *Disclosure while giving testimony.* — Any person who has received, by any means authorized by this subtitle, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this subtitle, may disclose the contents of that communication or the derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of this State or any political subdivision thereof.

(d) *Privileged character of communication not lost.* — An otherwise privileged wire or oral communication intercepted

in accordance with, or in violation of, the provisions of this subtitle, does not lose its privileged character.

(e) *Communications relating to offenses not specified in order.* — When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (a) and (b) of this section. The contents and any evidence derived therefrom may be used under subsection (c) of this section when authorized or approved by a judge of competent jurisdiction where the judge finds on subsequent application that the contents were otherwise intercepted, in accordance with the provisions of this subtitle. The application shall be made as soon as practicable."