STATE OF MARYLAND *v.* JAMES ISAAC MAYES,
JACQUELYN MAYES AND JOHN
WHILEY GOODING

[No. 44, September Term, 1978.]

*Decided March 29, 1979.*

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellant.

*Fred Warren Bennett* and *Alan J. Goldstein,* with whom

were *Goldstein, Ahalt, Glassman & Bennett, Chartered* and *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

Certiorari was granted in this consolidated criminal cause to review the judgments of the Court of Special Appeals upholding dismissal of the separate multi-count indictments returned against respondents James I. Mayes, Jacquelyn Mayes, and John W. Gooding. *State v. Mayes,* 39 Md. App. 635, 387 A. 2d 794 (1978). Finding that the three indictments were not validly obtained under the federal wiretap law and, consequently, were properly dismissed, we will affirm that court's determination.

Prior to a discussion of the reasons for our decision in this case, we think it helpful to digress briefly and set forth at least a thumbnail sketch of the workings and interrelationship of the federal and Maryland statutory provisions dealing with electronic surveillance that play a central role here. When it became clear in the wake of the United States Supreme Court's decisions in *Berger v. New York,* 388 U. S. 41, 87 S. Ct. 1873, 18 L.Ed.2d 1040 (1967), and *Katz v. United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967), that there are constitutional strictures on both the state and national governments' right to conduct electronic surveillance, Congress decided to confront the problem. Relying on its plenary power to control interstate commerce under section eight of article one of the United States Constitution, it enacted as a portion of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. III, §§ 801-804, 82 Stat. 197, what is now popularly referred to as Title III. In seeking to protect the privacy of the individual while at the same time aiding in the enforcement of the criminal laws, *see* S. Rep. No. 1097, 90th Cong., 2d Sess. 66-69 (1968), *reprinted in* [1968] U.S. Code Cong. & Ad. News 2112, 2153-56, the Congress insured that a uniform national standard would govern the use of electronic surveillance by including within Title III's provisions standards for the use of wiretaps that the states, if they chose to allow their law

enforcement officials to undertake such surveillance, must, at a minimum, comply with but which they may, if they desire, make more restrictive. *See State v. Siegel,* 266 Md. 256, 271, 292 A. 2d 86, 94 (1972).

The provisions of Title III, which now stand substantially as they did when the wiretaps in this case were executed, presently are codified in 18 U.S.C. §§ 2510-2520 (1976). In Maryland, from 1956 until 1977, electronic surveillance was permitted by the General Assembly under Md. Code (1974), §§ 10-401 to 408 of the Courts Article (previously codified as Md. Code (1957), Art. 35, §§ 92-99). These requirements were subsequently revised so that effective July 1, 1977, new provisions, now found at Md. Code (1974, 1978 Cum. Supp.), §§ 10-401 to 412 of the Courts Article, control. Although there is some question in this case about which set of state statutory provisions should be applied — the earlier being in effect at the time of the application for and execution of the initial wiretap order, while the latter were in force at the time the parties presented to the circuit court the questions we find dispositive here — we need not determine the issue because we think that our conclusion is compelled by the minimum standards enunciated in the federal legislation.

Examining the statutory sections of importance here, we find that under the terms of Title III an order issued by a state judicial officer authorizing a wiretap must enumerate the offenses for which there is probable cause to conduct surveillance, 18 U.S.C. § 2518 (3) (a) (1976) (Cts. Art. (1978 Cum. Supp.), § 10-408 (c) (1)),[1] those crimes for which taps can be initiated being circumscribed by the statute itself. 18 U.S.C. § 2516 (2) (1976) (Cts. Art. (1978 Cum. Supp.), § 10-406). It was recognized by the Congress, however, that in the course of an authorized wiretap, evidence of "other offenses" not named in the original order might surface. To provide for this contingency, in line with the act's purpose of limiting the use of unauthorized wiretaps, it was statutorily

---

1. Inasmuch as this State's current wiretap law is strikingly similar to Title III, in this opinion we will cross-reference the federal sections cited to those of our current Code; however, in doing so we intimate no conclusion as to whether we would construe those provisions as being identical to their federal counterparts.

mandated that such evidence could be used as testimony in any state "proceeding" only if the government "as soon as practicable" sought and obtained judicial authorization for such further use. 18 U.S.C. § 2517 (3), (5) (1976) (Cts. Art. (1978 Cum. Supp.), § 10-407 (c), (e)).[2] Against this background, we now turn to our analysis of the instant case.

Acting in response to a petition by the State's Attorney, Judge William B. Bowie, in the Circuit Court for Prince George's County, issued an ex parte order on October 27, 1976, authorizing the county police to use wiretaps to intercept the telephone conversations of James I. Mayes and others that allegedly were being made from a designated location and related to "illegal sports bookmaking and narcotics." Based on the information from these taps, acquired between October 28 and November 18, 1976, a search warrant was obtained from Judge Bowie and executed on November 19, 1976. The evidence procured as a result of this search, as well as the logs of the previously intercepted communications, was then presented to the grand jury and on March 23, 1977, that body returned indictments charging the respondents and others with various drug and gambling offenses, including possession of marihuana and phencyclidine (PCP) and keeping a gaming table.

Following the filing of the indictments, each of the respondents answered with a motion to suppress the evidence seized as a result of the November 19 search on the grounds that the initial wiretap order was invalid. At the circuit court hearing on the motions in August 1977, Judge Howard S. Chasanow denied the requests, but at the same time suggested to the parties that Judge Bowie's original order

---

2. In pertinent part, section 2517 (5) provides:

Such contents [of a wiretap] and any evidence derived therefrom may be used under subsection (3) of this section [(providing for the use while giving testimony in any federal or state proceeding of any information concerning or evidence derived from an authorized wiretap)] when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of [Title III]. Such application shall be made as soon as practicable. [18 U.S.C. § 2517 (5) (1976).]

may not have been sufficiently broad to have authorized the disclosure to the grand jury of conversations dealing with marihuana, PCP, and gambling offenses other than sports bookmaking. The State responded to this intimation by filing a Petition for Disclosure with Judge Bowie pursuant to 18 U.S.C. § 2517 (5) (1976), Md. Code (1974), § 10-406 of the Courts Article, and Md. Code (1974, 1978 Cum. Supp.), § 10-407 (e) of the Courts Article in which it acknowledged that the subject of the intercepted conversations possibly related to crimes other than those of illegal sports bookmaking and the sale of narcotics specified in the initial wiretap order and asked that it be given authority to use all evidence of illegal activities garnered from the taps. Judge Bowie conducted a hearing on this motion on October 13, 1977, and, after interpreting his October 1976 order as not contemplating the interception of conversations dealing with nonnarcotic drugs such as marihuana and PCP or conversations relating to illegal gambling of a kind other than sports bookmaking, declined to grant the Petition for Disclosure. As the basis of his refusal, Judge Bowie declared that the prosecution's section 2517 (5) disclosure request, made nearly a year after the wiretap interceptions and after their use before the grand jury, had not been made "as soon as practicable" as required by statute. See 18 U.S.C. § 2517 (5) (1976) (Cts. Art. (1978 Cum. Supp.), § 10-407 (e)).

Encouraged by this ruling, respondents renewed their motions to suppress, this time incorporating with them requests that the indictments be dismissed. On November 2, 1977, Judge Chasanow, after concluding that he was bound by Judge Bowie's ruling as to both the scope of the original order and the timeliness of the government's disclosure petition, determined that the dismissal of all counts of the indictments was required. Such a sanction was in order, according to the judge, because the State conceded that the grand jury had before it and could have utilized the intercepted conversations dealing with marihuana, PCP, and illegal gambling other than sports bookmaking when it considered each of the alleged violations that resulted in each of the counts of the indictments.

Claiming authority under Md. Code (1974, 1978 Cum. Supp.), § 12-302 (c) (1) of the Courts Article to appeal the dismissal rulings, before the Court of Special Appeals the State urged reversal for three reasons: 1) Judge Bowie's ruling was in error, 2) Judge Chasanow was incorrect in stating that he was obliged to follow Judge Bowie's ruling, and 3) dismissal of the indictments was not the proper sanction for this type of violation of the wiretap statute. In affirming the circuit court, the Court of Special Appeals concluded, as to the first contention, that because the State did not appeal Judge Bowie's October 1977 ruling within thirty days of its entry, as that court held it was statutorily entitled to do under Md. Code (1974, 1978 Cum. Supp.), § 10-408 (i) (3) of the Courts Article, it was bound by that order.[3] *State v. Mayes, supra,* 39 Md. App. at 641-42, 387 A. 2d at 797-98. In addressing the second contention, the appellate court found that Judge Chasanow was likewise bound by Judge Bowie's ruling on the Petition for Disclosure because denial of the petition was tantamount to granting a motion to suppress from which there was no de novo review at the trial court level. *Id.* at 642 [798] (applying Maryland Rule 736 f 2). Finally, the Court of Special Appeals held that dismissal of the indictments was the correct remedy in this case for the State's improper use of the conversations not authorized to be seized under the original wiretap order. *Id.* at 643-45 [798-99].

Before this Court the State has urged the same grounds for reversal it did before the intermediate appellate court, but in reaching what we conclude to be the correct disposition of the matter we do not consider either the extent to which Judge Chasanow was bound by Judge Bowie s determination [4] or the appealability, at the instance of the

---

3. In this regard, the Court of Special Appeals equated "an application for an order of approval," the denial of which is immediately appealable by the State pursuant to Md. Code (1974, 1978 Cum. Supp.), § 10-408 (i) (3) of the Courts Article, with the prosecution's Petition for Disclosure, an interpretation that, it is arguable, might be overly broad in light of the fact that the central subject of section 10-408's other provisions is the initial order authorizing a wiretap.

4. Although we have not pondered the matter, we note that because Judge Bowie's ruling encompassed two separate determinations — an interpretation of the scope of the initial wiretap order and a finding that the

State, of the two circuit court rulings. Rather, we will simply assume, without deciding, that such an appeal does lie and move on to a consideration of whether, under section 2517 (5), additional judicial authorization was needed prior to disclosure.

In this regard, the State contends that because the evidence relating to PCP and marihuana was not evidence relating to "offenses other than those specified in the order of authorization or approval," 18 U.S.C. § 2517 (5) (1976) (Cts. Art. (1978 Cum. Supp.), § 10-407(e)), there was no reason for obtaining subsequent section 2517 (5) authorization prior to its use before the grand jury and, as a consequence, the failure to obtain such authority has no impact on this case.[5] In support of this assertion the Attorney General first contends that the marihuana and PCP offenses were encompassed within the initial wiretap authorization of October 27, 1976. Referring to that document, the State points out that in its preamble and again in its conclusion the order alludes to violations of the laws dealing with "controlled dangerous substances." [6] This, it asserts, shows that Judge

State had not complied in a timely manner with the requirements of section 2517 (5) — the extent to which Judge Chasanow was bound could depend on which prong he was considering.

5. Before this Court the State has not contended, as this opinion will make clear it could not, that the use of evidence of illegal gambling other than sports bookmaking need not have been authorized under section 2517 (5).

6. In the preamble of his October 1976 order, Judge Bowie recounted:

> The aforegoing Petition of Arthur A. Marshall, Jr., State's Attorney for Prince George's County, under oath as well as the Affidavits attached hereto, having been read and considered by This Court, the Court . . . is satisfied that probable cause exists to believe that James Isaac MAYES . . . and others yet unknown . . . are presently committing the crime of illegal sports bookmaking violations and conspiracy to commit said offense in violation of Article 27, Sections 38, 237, 240 and 357 *and the crimes of distribution of controlled dangerous substances and conspiracy to commit the said offense* in violation of Article 27, Section 286 (a) of the Annotated Code of Maryland, 1957 Edition . . . . [(Emphasis supplied.)]

In the closing paragraphs of the order, Judge Bowie directed:

> Also these wire communications will be between the aforementioned persons and their co-conspirators in the alleged scheme to distribute *controlled dangerous substances* and narcotic drugs and the wire communications to be intercepted will concern:
> (a) the identity, telephone numbers, places of residence, places of

Bowie authorized the seizure of conversations relating to marihuana and PCP because even though neither is a "narcotic drug" each comes within the statutory definition of a "controlled dangerous substance." *See* 21 U.S.C. §§ 802 (6), (16), 812 (c) (1976); Md. Code (1957, 1976 Repl. Vol. & 1976 Supp.), Art. 27, §§ 277 (f), (q), 279. In further support of this contention, the State asks us to examine the police affidavit that was submitted to procure the initial wiretap order in which, it urges, it was made clear that the authorities were seeking evidence as to crimes dealing with controlled dangerous substances rather than only those relating to narcotics.

After examining in full Judge Bowie's October 1976 order together with the State's supporting affidavit, we accept his determination that this order was not designed to encompass the seizure of conversations relating to all controlled dangerous substances and gambling offenses but only to the investigation of criminal conduct involving violations of the narcotics laws and illegal sports bookmaking. In reaching this conclusion we begin with the premise that an unambiguous wiretap order does not require interpretation and any expansion or contraction of its scope at the expense of its plain meaning will not be permitted. Here, however, a construction of the order was authorized because, we conclude, ambiguity exists as to its reach. This is demonstrated by a comparison of the earlier referred to language relied on by the State, note 6 *supra,* with the following pivotal provision of the order:

> IT IS, THEREFORE, This 27th day of October, 1976, ORDERED that pursuant to the attached Petition of the State's Attorney for Prince George's County, [the Prince George's County Police were authorized] . . . to intercept and record telephonic wire communications . . . dealing with violations of the laws regulating *illegal sports bookmaking and*

---

purchases, places of delivery, manner of delivery and purchase of *controlled dangerous substances* by these co-conspirators to and from the aforementioned persons. [(Emphasis supplied.)]

> *narcotics* .... Authority under this Order shall not terminate automatically upon obtaining or intercepting the first of the described conversations, there being probable cause to believe that repeated communications will occur with many other persons concerning the *illegal sports bookmaking operation and narcotics law violations* and the conspiracy to violate the above laws, and other matters related to violations of the laws regulating *illegal sports bookmaking and narcotics laws.* [(Emphasis supplied.)]

Nor is this ambiguity resolved by reference to the affidavit used to obtain the order. While to a limited extent an affidavit used in applying for authorization to conduct wiretap surveillance, if it is incorporated by reference or more fully defines a term or terms used in the order, might be of some aid in interpreting the initial order, here the affidavit only compounds the ambiguity because it likewise uses both the terms "narcotic" and "controlled dangerous substance" without further particularization or explanation. When, as here, ambiguity exists as to the extent of the authority granted by the wiretap order, we think the trial judge's interpretation is entitled on appeal to great weight in resolving such an ambiguity (again assuming appellate review is permissible at the instance of the State), particularly when the reviewing judge was the author of the original order. Thus, we accept Judge Bowie's ruling that the offenses for which authorization to tap was given were limited to those involving narcotics and did not encompass marihuana, PCP, and other nonnarcotic drugs. Moreover, the result reached here, by confining the scope of the order to the narrower of the two possible interpretations, comports with the legislative purpose of protecting the privacy of the individual. *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. III, § 801 (b), (d), 82 Stat. 197.

Possibly anticipating this determination, the State argues in the alternative that the term "narcotics" should be read broadly to allow for the use of conversations with respect to any related drug crime, including marihuana and PCP

possession and sale, without the necessity of further judicial authorization under section 2517 (5). We, however, decline to accept this suggested expansion of the scope of the October 1976 order, for to do so would undermine the protection afforded individual privacy by the requirements of Title III. The Congress certainly indicated its intent that, within certain limits, state judges could broadly delineate the offenses for which they were granting authorization to tap, see 18 U.S.C. § 2516 (2) (1976) (Cts. Art. (1978 Cum. Supp.), § 10-406),[7] yet, in doing so, we do not think Congress was seeking to limit the extent to which a judge, in an initial order, could curb the general scope of a wiretap which is statutorily permitted so that the seizure of any evidence relating to an offense other than that specifically named could not be used in a state proceeding prior to obtaining further judicial authorization. Supporting this conclusion is the decision of the United States Court of Appeals for the Seventh Circuit in *United States v. Brodson*, 528 F. 2d 214 (7th Cir. 1975). In *Brodson* the government had sought and obtained authorization to intercept conversations dealing only with violations of 18 U.S.C. § 1955, which prohibits the operation of an illegal gambling business in interstate commerce. Subsequently, the wiretap evidence intercepted pursuant to that order was used by the government to obtain an indictment against the

---

7. Section 2516 (2) provides that interceptions may be initiated by State officers only to gain evidence of "the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crimes dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses." 18 U.S.C. § 2516 (2) (1976). Though that section's provision allowing the placing of taps for crimes "dangerous to life, limb, or property" is quite broad, the Maryland General Assembly, as indicated by the current counterpart to section 2516 (2), has apparently decided not to use that clause to its fullest extent for the legislature has allowed the inception of wiretaps only to gain evidence of "the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in controlled dangerous substances, or any conspiracy to commit any of the foregoing offenses." Md. Code (1974, 1978 Cum. Supp.), § 10-406 of the Courts Article. It should be added that this limitation on the number of criminal acts for which wiretaps can be initiated does not limit the number of offenses for which there can be prosecutions based on wiretap evidence so long as that evidence is gained in the course of an otherwise proper wiretap and its disclosure and use are authorized in accord with section 2517 (5). *See* United States v. Pacheco, 489 F. 2d 554, 564 (5th Cir. 1974), *cert. denied,* 421 U. S. 909 (1975).

defendant for transmitting wagers and wagering information in interstate commerce in violation of 18 U.S.C. § 1084. The United States District Court for the Eastern District of Wisconsin, on motion of the defendant, dismissed the indictment because the government had not obtained authorization under section 2517 (5) to use the evidence in charging the section 1084 violation. On appeal, the government contended that no authorization was necessary "because the evidence secured under the Section 1955 order and authorization and used in that prosecution applied equally well to the Section 1084 prosecution." 528 F. 2d at 216. The federal Seventh Circuit, however, found it to be "of no consequence ... because the two offenses are wholly separate and distinct; they involve dissimilar elements and require different evidence, even though some of it might overlap because both concern illegal gambling." *Id.* The basis for this more restrictive definition of "other offenses" under section 2517 (5), the court stated, was "to carry out the purpose of the Congress and make certain that the privacy of the individual is protected [as provided in Title III]." *Id.;* accord, *United States v. Marion,* 535 F. 2d 697, 705-06 (2d Cir. 1976). We think this federal precedent portends a similar result here. While the Attorney General, no doubt, would crave a more lenient, less literal interpretation of what constitutes an "other crime," wiretap evidence of which has to be judicially authorized under section 2517 (5) before it can be used, we can but agree with the *Marion* court when it cogently stated:

> Strict compliance with the requirements of § 2517 (5) and the other strictures imposed by Title III is ... essential. Congress carefully circumscribed utilization of the occasionally useful but potentially dangerous law enforcement tools of electronic surveillance in an effort to comply with the Fourth Amendment and to "protect effectively the privacy of wire and oral communications [and] the integrity of court and administrative proceedings." To ignore or gloss over these restrictions, or view them as mere technicalities to be read in such a fashion as to

render them nugatory, then, is to place in peril our cherished personal liberties. [535 F. 2d at 706 (citations and footnote omitted).]

See State v. Siegel, 266 Md. 256, 273-74, 292 A. 2d 86, 95-96 (1972). But see C. Fishman, Wiretapping and Eavesdropping § 166, at 246-49 (1978) (Brodson and Marion courts' interpretations "unnecessarily rigid and formalistic"). Consequently, in accord with Brodson and Marion, we now hold that, without further authorization under section 2517 (5), Judge Bowie's initial order, being limited to the seizure of communications dealing with specific types of drug and gambling violations, only authorized the State to use the evidence gained from the wiretap in the prosecution of crimes involving narcotics and illegal sports bookmaking.[8]

It follows from what we have just said that if the State desired to use the evidence pertaining to PCP and marihuana offenses to gain indictments, it was obligated "as soon as practicable" to acquire subsequent judicial authorization under section 2517 (5). This, as Judge Bowie determined, the State obviously did not do for the Petition for Disclosure was not presented to the judge until nearly one year after the conversations were intercepted. Moreover, we think the State in this case was precluded, at the time it attempted to do so, from gaining section 2517 (5) authority because, at a minimum, such permission must be sought prior to use in a "proceeding," here the grand jury, of the evidence pertaining to "other crimes." To procure such a section 2517 (5) order, the Congress spelled out the government's burden as one of "showing that the original order was lawfully obtained, that it was sought in good faith and not as [a] subterfuge search, and that the communication was in fact incidentally intercepted during the course of a lawfully executed order."

---

8. Although the State cites several other federal cases that it asserts compel a different result here, we find the portions of those authorities it relies on to be either inapposite, United States v. Grant, 462 F. 2d 28, 33 (2d Cir.), cert. denied, 409 U. S. 914 (1972), distinguishable as involving the interpretation of a statutory provision other than section 2517 (5), United States v. Moore, 513 F. 2d 485, 500-02 (D.C. Cir. 1975), or dicta, United States v. Masciarelli, 558 F. 2d 1064, 1067 (2d Cir. 1977); United States v. Daly, 535 F. 2d 434, 440 n. 6 (8th Cir. 1976).

S. Rep. No. 1097, 90th Cong., 2d Sess. 100 (1968), *reprinted in* [1968] U.S. Code Cong. & Ad. News 2112, 2189. Thus, the Congress has made evident its intention that section 2517 (5) should serve the purpose of preventing the government from evading the restrictions put upon the original application (e.g., showing probable cause, enumerating the offense, showing the ineffectiveness of other investigative techniques) by naming one crime while anticipating the interception of evidence of another offense for which it could not meet the requirements for securing an initial wiretap authorization. *United States v. Marion, supra,* 535 F. 2d at 701. In this case, by supplying to the grand jury the wiretap conversations relating to PCP and marihuana prior to seeking judicial authorization, the government totally frustrated the purpose of and intent behind section 2517 (5), conduct which should not be legitimated by a court. *See United States v. Marion, supra,* 535 F. 2d at 707; *United States v. Brodson, supra,* 528 F. 2d at 215-16; *United States v. Aloi,* 449 F. Supp. 698, 722 (E.D.N.Y. 1977).[9]

In concluding that Judge Bowie correctly determined that the State should have sought judicial approval prior to using the evidence of "other crimes" before the grand jury, we find that we have not exhausted all the issues in this appeal that require our attention for we are still confronted with Judge Chasanow's action dismissing the indictments, which ordinarily constitutes an appealable judgment under Md. Code (1974, 1978 Cum. Supp.), § 12-302 (c) (1) of the Courts Article. In this regard, though conceding that the indictments were, at least to a degree, the product of the grand jury's use of

---

9. In agreeing with Judge Bowie's conclusion that the State's Petition for Disclosure was not filed in a timely manner, we note that the State has not contended that the circuit court's consideration of the conversations dealing with marihuana and PCP as part of that court's determination to grant the search warrant used in this case, which came immediately after the wiretap here was ended, could serve as a section 2517 (5) authorization, *cf.* United States v. Tortorello, 480 F. 2d 764, 781-83 (2d Cir.) (renewal of wiretap order after reviewing conversations seized, including those relating to "other crimes," was authorization for use in accord with section 2517 (5)), *cert. denied,* 414 U. S. 866 (1973), and therefore we express no opinion about whether the judicial approval of a search warrant in reliance on an affidavit containing "other crimes" evidence could act in some circumstances as such an authorization.

the wiretap communications whose disclosure Judge Bowie refused to authorize, the State nonetheless contends that since the facial validity of these accusations is not at issue here, the fact that such evidence was submitted to the grand jury and used by it as a basis for returning the indictments does not mandate their dismissal; rather, according to the State, the remedy, if any, afforded the defendants for such an improper use is a civil damage suit pursuant to 18 U.S.C. § 2520 (1976) and Md. Code (1974, 1978 Cum. Supp.), § 10-410 of the Courts Article.

The Attorney General is quite correct in asserting that, ordinarily, the nature of the evidence before a grand jury, even if that evidence was illegally seized or for some other reason would not be admissible at trial, does not destroy the validity of an indictment. *See, e.g., United States v. Calandra,* 414 U. S. 338, 344-45, 94 S. Ct. 613, 38 L.Ed.2d 561 (1974) (evidence from illegal search and seizure); *United States v. Costello,* 350 U. S. 359, 363, 76 S. Ct. 406, 100 L. Ed. 397 (1956) (hearsay evidence); *Everhart v. State,* 274 Md. 459, 486, 488, 337 A. 2d 100, 116 (1975) (evidence from illegal search and seizure). In the context of this case, however, that rule has been modified by statute to prohibit the unauthorized use of communications relating to crimes not named in the initial wiretap authorization in "any proceeding" held under the authority of a state, 18 U.S.C. §§ 2515, 2517 (3), (5) (1976) (Cts. Art. (1978 Cum. Supp.), §§ 10-406, -407(c), (e)), a far-reaching ban that includes use by a grand jury.[10] *See United States v.*

---

10. In urging that the grand jury could use the unauthorized wiretap communications in question here, the State argues that a grand jury proceeding is not a "proceeding" within the meaning of section 2517 of Title III. In support of this contention, the government points out that prior to 1970 section 2517 (3) provided for the exclusion of any wiretap evidence of another crime not authorized for use as testimony under section 2517 (5) "in any criminal proceeding ... of any State ... or in any ... State grand jury proceeding," 18 U.S.C. § 2517 (3) (Supp. IV 1967-69), and that by amending this provision in 1970 to exclude the use of such evidence only before "any proceeding" of a State, Organized Crime Control Act of 1970, Pub. L. No. 91-452, tit. IX, § 902 (b), 84 Stat. 922 (currently codified at 18 U.S.C. § 2517 (3) (1976)), Congress, in not making specific mention of grand juries as before, sought to allow them to use such evidence. The answer to the State's contention is found in the report of the committee of the United States House of Representatives that considered the 1970 amendment. That report indicates that the words "any proceeding" only were substituted to include civil cases within the scope of the existing statutory exclusion. H.R. Rep. No.

*Marion, supra,* 535 F. 2d at 703; *United States v. Brodson, supra,* 528 F. 2d at 215-16. Further, we have heretofore made clear that the dismissal of an indictment, based solely on wiretap evidence which use is not properly authorized, is an appropriate sanction. *State v. Siegel,* 266 Md. 256, 274, 292 A. 2d 86, 95 (1972). In *Siegel* this Court upheld the dismissal of an indictment based on evidence seized under an invalid order authorizing a wiretap, stating: "The [wiretap] statute sets up a strict procedure that *must* be followed and we will not abide any deviation, no matter how slight, from the prescribed path." *Id.* (emphasis in original); *accord, United States v. Marion, supra,* 535 F. 2d at 706; *United States v. Brodson, supra,* 528 F. 2d at 216; *see United States v. Aloi, supra,* 449 F. Supp. at 721-23. While the directive contained in this language has not been eroded by any decision of this Court over the intervening seven years, and we here today reaffirm the propriety of the dismissal of the indictment in that case, nonetheless we must point out a potentially important distinction between that case and the one presently before us.

In *Siegel,* the wiretap involved initially was authorized for the seizure of conversations dealing with violations of state lottery laws, and the single-count indictment that followed, which charged the defendant with conspiracy to violate those laws, was obtained solely on the basis of the conversations seized during the tap later determined by this Court to be invalid from its inception. 266 Md. at 258-59, 272-74, 292 A. 2d at 87-88, 95-96. Thus, the entire charge was dismissed because the conversations seized in the illegal wiretap and used by the grand jury were germane to and the sole foundation for the only count contained in the indictment. Here, however, where the question is whether evidence seized in the course of a properly authorized and executed wiretap can be utilized, a somewhat more involved analysis may be required because all of the indictments contain multiple counts and two have several counts, such as possession of the narcotic drug cocaine, that could have been founded solely on conversations that would have been authorized for seizure

1549, 91st Cong., 2d Sess. 59-60 (1970), *reprinted in* [1970] U.S. Code Cong. & Ad. News 4007, 4036.

and use under Judge Bowie's October 1976 order. It is, therefore, at least arguable that, if there were conversations relating to narcotic drug offenses, then the counts of the indictments pertaining solely to those offenses need not have been dismissed if the intercepted evidence of nonnarcotic drug crimes could in no way form a basis for those charges. Certainly, a contrary result is not mandated by this Court's decision in *Siegel.* Moreover, even if there were no intercepted conversations relating to narcotic drug crimes, there was other evidence obtained through the execution of the search warrant which was before the grand jury and could have been the sole basis for the narcotic drug offense counts of the indictments. It is also arguable that if it could be shown that the search warrant here was valid even though the affidavit used to obtain it contained "other crimes" evidence lacking section 2517 (5) authorization — and there is some federal authority that evidence that could not be used before a grand jury without section 2517 (5) authorization can be used to obtain a valid search warrant, *United States v. Johnson,* 539 F. 2d 181, 187 n. 24 (D.C. Cir. 1976), *cert. denied,* 429 U. S. 1061 (1977); *United States v. Vento,* 533 F. 2d 838, 854 (3d Cir. 1976); *cf. United States v. Licavoli,* 456 F. Supp. 960, 965-66 (N.D. Ohio 1978) (arrest warrant) — those counts of the indictment procured solely on evidence of narcotic drug offenses seized under authority of the warrant need not have been dismissed. In this context we now determine only that when there is evidence of "other crimes" obtained from a wiretap and presented to the grand jury without prior judicial authorization, any count to which it may relate must be dismissed even though there exists independent evidence before that body to support that charge. Other than this, we do not reach in this case the interesting issues just posed because here the State has conceded that the unauthorized evidence of "other crimes" pertains to each of the counts set out in the indictments.[11] Consequently, we will not disturb the

---

11. It is impossible for us to determine whether the concession made by the State was justified because the record before us does not contain either the logs or transcripts of the intercepted conversations or the proceedings relevant to the issuance and execution of the search warrant.

circuit court's dismissal of all counts of each of the three indictments.

While the facts and circumstances of this case mandate our conclusion that the State should have punctually sought authorization to use the conversations relating to nonnarcotic drugs and illegal gambling other than sports bookmaking before the grand jury and its failure to do so requires, on the record before us, the dismissal of all counts of each of the three indictments, we cannot help but hope that this is the last time such action will be mandated. The requirements for obtaining judicial permission in accord with section 2517 (5) are not overly technical or strenuous, *see* p. 637 *supra,* and thus we cannot see why, almost as a matter of routine, a state's attorney would not promptly submit *all* conversations seized under a wiretap order for such further authorization, thereby avoiding the pitfall that developed here. Certainly, such a simple and straightforward preventive measure is preferable to swallowing the result that this Court now is being required to administer as a cure for the State's failure to act when it turned out that as a prerequisite to use, section 2517 (5) compelled further judicial endorsement.[12]

> *Judgments affirmed.*
> *Costs to be paid by Prince George's*
> *County.*

---

12. Because jeopardy had not attached, the dismissal of the indictments here will not preclude the State's Attorney, should he desire to pursue the prosecution, from seeking new indictments if limitations do not constitute a bar. *See, e.g.,* Irvin v. State, 276 Md. 168, 172, 344 A. 2d 418, 421 (1975); Md. Rule 725 e.