STATE OF MARYLAND *v.* CARLOS MARCUS NEL-
SON, DONNA JO NELSON, PAMELA MICHELE
ROGERS, ROBERT EARL GILLIARD, JR.,
CYNTHIA JO SHANE, FRANK RAWL-
INGS, JR., MAURICE PNIX HERN-
DON, MARK TERRENCE
MILLINGS, CLARZELL
ORLANDO DAVIS AND
RICKY TYRONE
FIELDS

[No. 1350, September Term 1979.]

*Decided June 17, 1980.*

The cause was argued before GILBERT, C. J., and MacDANIEL and WEANT, JJ.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Robert C. Bonsib, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*Geraldine K. Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellees Robert Earl Gilliard, Jr., Cynthia Jo Shane, Mark Terrence Millings and Clarzell Orlando Davis. *Alan J. Goldstein,* with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* on the brief, for appellees Carlos Marcus Nelson and Donna Jo Nelson. Submitted on brief by *Joseph S. Casula* for appellee Ricky Tyrone Fields.

GILBERT, C. J., delivered the opinion of the Court.

## — THE PREFACE —

This is another in the series of appeals testing the breadth, width, and depth of the Maryland Wiretap and Electronic Surveillance Act. Maryland Courts and Judicial Proceedings Code Ann. (1980) §§ 10-401 to 10-412, inclusive.[1]

Judge Albert T. Blackwell, Jr. of the Circuit Court for Prince George's County dismissed the indictments against the ten appellees on the ground that the evidence obtained through an authorized wiretap on the telephone of Carlos

---

1. *See* Smith v. Maryland, 439 U.S. 1001 (1979), *aff'g,* 283 Md. 156, 389 A.2d 858 (1978); State v. Mayes, 284 Md. 625, 399 A.2d 597 (1979), *aff'g,* 39 Md. App. 635, 387 A.2d 794 (1978); Spease v. State, 275 Md. 88, 338 A.2d 284 (1975), *aff'g,* 21 Md. App. 269, 319 A.2d 560 (1974); State v. Siegel, 266 Md. 256, 292 A.2d 86 (1972), *aff'g,* 13 Md. App. 444, 285 A.2d 671 (1971); Baldwin v. State, 45 Md. App. 378, 413 A.2d 246 (1980); Shingleton v. State, 39 Md. App. 527, 387 A.2d 1134 (1978); Poore v. State, 39 Md. App. 44, 384 A.2d 103 (1978); Calhoun v. State, 34 Md. App. 365, 367 A.2d 40 (1977); Washburn v. State, 19 Md. App. 187, 310 A.2d 176 (1973). *See generally,* Gilbert, *A Diagnosis, Dissection and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* 8 U. Balt. L. Rev. 1979).

Marcus Nelson exceeded the scope of the order permitting the interception and was, therefore, illegally obtained and inadmissible. Unable to separate the illegal from the legal because of the lack of clear testimony which might have allowed that separation, Judge Blackwell was compelled to dismiss the several indictments charging the appellees with diverse violations of the Controlled Dangerous Substances Laws of Maryland. Md. Ann. Code art. 27, §§ 276 to 302, inclusive (1976, 1979 Cum. Supp.).

Manifestly upset by the circuit court's bringing an abrupt cessation to its case against appellees, the State has appealed. Courts Art. § 12-302 (c) 1. We are urged to reverse Judge Blackwell's order and to reinstate the indictments. For the reasons hereinafter stated we decline to walk the path the State would have us tread, and we affirm the circuit court's dismissal of the indictments in the instant case.

## — THE BASIS OF THE INTERCEPTION ORDER —

The State's Attorney for Prince George's County made application for an order permitting the electronic interception of a telephone leased to Carlos Nelson, 9544 Muirkirk Road, Apartment #T2, Laurel, Maryland. The application was based on an affidavit submitted by Corporal Raymond F. Gheen of the Prince George's County Police Department. Corporal Gheen related in his affidavit that he had commenced investigation in September 1972 into the activities of Carlos Nelson as a result of information furnished by a confidential informant. Other confidential informants supplied additional data to Gheen. The information given to Gheen clearly indicated that Nelson was engaged in trafficking in controlled dangerous substances. Gheen's extensive investigation led him to believe that Carlos Nelson and others were using telephone line 776-1428 in furtherance of an illegal drug distribution scheme and that telephone conversations subject to interception "were occurring on . . . [that] line."

## — THE ORDER PERMITTING ELECTRONIC INTERCEPTION —

On June 6, 1978, a judge for the Circuit Court for Prince George's County signed an order that allowed interception of conversations on "telephone line 776-1428 installed at 9544 Muirkirk Road, Apartment #T2." The order provided that the police were "to intercept and record telephonic wire communications of Carlos Marcus Nelson, Robert Gilliard, Jr., and others yet unknown, dealing with the violations of the controlled dangerous substance *(narcotics)* laws of the State of Maryland, relating to controlled dangerous substance *(narcotics)*, as well as conspiracy to commit the aforesaid offenses. . . ." (Emphasis supplied.)

The application, on four occasions, refers to "controlled dangerous substances *(narcotics)*." The order, in six different places, is worded in exactly the same form as the application. The order also refers "to the distribution of controlled dangerous substances, and more specifically concerning: . . . illicit *drugs*." (Emphasis supplied.)

## — MOTION TO DISMISS —

Prior to the filing of the motion to dismiss the indictments, the appellees had moved to suppress the evidence obtained through the wiretap. At a hearing on the suppression motion, Corporal Gheen testified that he sought "authorization to intercept *narcotic* communications." (Emphasis supplied.) Conversations relating to other matters were also intercepted and recorded. Those other communications concerned marihuana and phencyclidine (PCP). The former is a Schedule I, Controlled Dangerous Substance, while the latter is a Schedule II Controlled Dangerous Substance. Md. Ann. Code art. 27, § 279. Neither, however, falls within the legislature's definition of "narcotic drug" as set out in the statute. Md. Ann. Code art. 27, § 277 q provides:

" *'Narcotic drug'* shall mean any of the following, whether produced directly or indirectly by

extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; and which have been found to present an extreme danger to the health and welfare of the community because of their addiction-forming and addiction-sustaining liabilities:

(i) *'Opiate'* shall mean any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having such addiction-forming or addiction-sustaining liability. It does not include, unless specifically designated as controlled under § 278 of this subheading the dextrorotatory isomer of 3-methoxy-n-methyl-morphinan and its salts (dextromethorphan). It does include its racemic and levorotatory forms; and *'opium poppy'* which shall mean the plant of the species Papaver somniferum L., except the seeds thereof, and *'poppy straw'* which shall mean all parts, except the seeds, of the opium poppy, after moving; and *'coca leaves'* which shall mean cocaine and any compound, manufacture, salt, derivative, mixture or preparation of coca leaves, except derivatives of coca leaves which do not contain cocaine, ecgonine or substances from which cocaine or ecgonine may be synthesized or made;

(ii) A compound, manufacture, salt, derivative, or preparation of opium, coca leaves, or opiates;

(iii) A substance and any compound, manufacture, salt, derivative, or preparation thereof which is chemically identical with any of the substances referred to in clauses (i) and (ii), except that the words *'narcotic drug'* as used in this section include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine."

The distinction between a "narcotic drug" and other controlled dangerous substances is more than mere

semantics. Narcotic drugs are "addiction-forming and addiction-sustaining." Recognizing that addiction type drugs may lead to the commission of other crimes in order to satiate the self-destructive habit, the General Assembly has mandated that a conviction arising out of the manufacture, distribution, dispensing or possession "in sufficient quantity to reasonably indicate" an intent to do one of the aforementioned with respect to a "narcotic drug" listed in Schedule I or II of section 279, is a felony punishable by imprisonment for not more than 20 years, or a fine of not more than $25,000, or both. Md. Ann. Code art. 27, § 286 (b) (1). On the other hand, a conviction for any of the same type of offenses, involving a non-narcotic substance, while still a felony, is subject to a much shorter period of incarceration and a lesser fine. Md. Ann. Code, art. 27, § 286 (b) (3) provides a penalty of not more than 5 years imprisonment, or a fine of not more than $15,000, or both.

Phencyclidine (PCP or angel dust) has been singled out for special treatment. If the controlled dangerous substance, leading to conviction under section 286 (a) is PCP, then the penalty is a sentence for not more than 10 years or a fine of not more than $20,000, or both. Md. Ann. Code art. 286 (b) (2).

Notwithstanding the clear, definite, and precise language of the interception order that communications relative to "Controlled Dangerous Substances (narcotics)," the police proceeded to intercept all conversations pertaining to controlled dangerous substances. Under the dictates of the application for the warrant, as well as the warrant, itself, they were not permitted to do so. Having limited themselves by an unnecessarily restrictive order, the police could not unilaterally shirk the shackle they voluntarily wore. They could have, but did not, seek a new order so as to enlarge upon the type of conversation that could be intercepted.

Any reading of the order allowing the interception reveals "that the offenses for which authorization to tap was given were limited to those involving narcotics and did not encompass marihuana, PCP, and other nonnarcotic drugs."

*State v. Mayes,* 284 Md. 625, 634, 399 A.2d 597, 602 (1979), *aff'g* 39 Md. App. 635, 387 A.2d 794 (1978).

If, as in *Mayes,* the State desired to intercept communications concerned with marihuana and PCP, it was incumbent upon it to seek judicial authorization. It did not, and now it must abide the result. *State v. Mayes,* 284 Md. at 637, 399 A.2d at 604.

Judge Digges, writing for the Court in *Mayes,* declared:

> "[W]hen there is evidence of 'other crimes' obtained from a wiretap and presented to the grand jury without prior judicial authorization, any count to which it may relate must be dismissed even though there exists independent evidence before that body to support that charge."

He continued that:

> "While the facts and circumstances of this case mandate our conclusion that the State should have punctually sought authorization to use the conversations relating to . . . [other crimes] before the grand jury and its failure to do so requires . . . the dismissal . . . of the indictments, we cannot help but hope that this is the last time such action will be mandated." *Mayes, supra* at 641-42; 399 A.2d at 606-07.

*Mayes* is dispositive of the instant case; we affirm.

> *Order dismissing indictments affirmed.*
>
> *Costs to be paid by Prince George's County.*