748 A.2d 478

**John Stanley DERRY**

v.

**STATE of Maryland.**

**No. 94, Sept. Term, 1998.**

Court of Appeals of Maryland.

March 17, 2000.

326

David B. Irwin (Joseph Murtha, Irwin Green & Dexter, L.L.P., on brief), Baltimore, for Petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

In this case, we must decide whether the State possesses the authority to file an interlocutory appeal of a trial court's decision to suppress the tape-recording of a conversation where the court based its suppression upon a violation of § 10–411(c) of the Maryland Wiretapping and Electronic Surveillance Act.[1] We shall hold that the State enjoys no such right.

## I.

### A.

On June 12, 1978, the lifeless body of Mark Stephen Schwandtner was discovered in the Gunpowder River near

---

1. The Maryland Wiretapping and Electronic Surveillance Act is codified as Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.), §§ 10–401 to 10–414 of the Courts and Judicial Proceedings Article. Unless otherwise specified, all subsequent statutory references in this opinion shall be to Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.), Courts and Judicial Proceedings Article.

Jones Road in Baltimore County. Exactly seventeen years and nine months later, on March 12, 1996, the Grand Jury for Baltimore County indicted Petitioner, John Derry, along with three co-defendants, on charges of murder, kidnaping and conspiracy to commit murder in connection with Schwandt-ner's apparent homicide. At the close of a suppression hearing held prior to trial, the Circuit Court for Baltimore County granted Petitioner's motion to exclude evidence of an audio-cassette recording of a February 4, 1996 conversation between himself and a police informant based upon the court's finding that the recording equipment used by the informant was never affixed with a State Police registration number pursuant to § 10–411(c).[2] The relevant facts adduced at the suppression hearing follow.

During 1995, the Federal Bureau of Investigation was using one Charles Wilhelm as a paid informant in a number of federal criminal investigations. In the course of those investigations, Wilhelm provided the F.B.I. with information implicating himself and Petitioner in a 1978 homicide in Baltimore County. The federal agents contacted Detective Michael Downes, a Baltimore County Police Officer assigned to work with the F.B.I., and apprised him of the information they had received. In an effort to obtain more information about the homicide, law enforcement officials decided to intercept and

---

2. Section 10–411 provides as follows:

(a) *In general.*—Law enforcement agencies in the State shall register with the Department of State Police all electronic, mechanical or other devices whose design renders them primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications which are owned by them or possessed by or in the control of the agency, their employees or agents. All such devices shall be registered within ten days from the date on which the devices came into the possession or control of the agency, their employees or agents.

(b) *Information required.*—Information to be furnished with such registration shall include the name and address of the agency as well as a detailed description of each device registered and further information as the State Court Administrator may require.

(c) *Serial number.*—A serial number shall be issued for each device registered pursuant to this section, which number shall be affixed or indicated on the device in question.

record certain conversations between Derry and Wilhelm. Accordingly, on December 22, 1995, Baltimore County Police executed a written agreement with Wilhelm in which the latter agreed to participate in and assist with the investigation of the 1978 homicide.

Sometime before Wilhelm conducted the interceptions, Detective Downes contacted the Baltimore County State's Attorney's Office to ensure compliance with the Maryland wiretap provisions. He was advised that any recording equipment to be used in connection with the investigation should be registered with the Maryland State Police. To this end, he contacted Detective Jack Cover, a member of the Baltimore County Police Department's Intelligence Unit and the officer responsible for completing the registration of the Department's wiretapping and electronic surveillance equipment pursuant to § 10–411. Cover told Downes that he "should get the serial numbers, model numbers off the equipment to be used and give it to him and have him register the equipment, as is his duty, with the State Police."

Although the F.B.I. owned the recording equipment that was to be used to investigate Petitioner's role in the 1978 homicide, it was Wilhelm who retained possession of the individual devices, since he had been using them in connection with his participation in the federal investigations. Some time in mid-January, 1996, the F.B.I. agreed to provide the manufacturers' serial numbers needed to identify and register the individual devices with the Maryland State Police. On January 15, 1996, the F.B.I. informed the Baltimore County Police Department of the serial numbers associated with the electronic recording equipment Wilhelm was using. Detective Downes immediately contacted Detective Cover and asked him to register four pieces of equipment: "a large recorder, . . . a Panasonic video camera and the ensuing recording device, and . . . a small mini-cassette, Panasonic, that Mr. Wilhelm had on his person." [3] That same day, Detective Cover told Detective

---

**3.** The four items were identified in Detective Cover's written request to the State Police as a Panasonic Recorder, Model # Rn 36, a STR

Downes that the equipment had been registered, effective January 15, 1996.

At some point during the ensuing weeks, F.B.I. technicians installed a video camera and VCR recorder, two of the recording devices registered by Detective Cover, in the back of a sub shop owned by Wilhelm in order that he might intercept and record a meeting arranged with Derry for February 3, 1996. According to plan, Wilhelm video-taped that meeting himself, by means of a remote control device that he kept on his person. The following day, Wilhelm tape recorded a second conversation with Derry during a get-together in Wilhelm's home. It was during that conversation, on February 4, 1996, that Petitioner allegedly confessed to his involvement in the 1978 murder.[4] The device used by Wilhelm to intercept and record this crucial communication was the Panasonic Recorder, Model Rn 36, that Wilhelm had kept hidden in his pocket during the conversation. Again, the micro-cassette recorder used on February 4th to record Petitioner's admissions had been registered with the State Police as of that date. Petitioner moved to suppress, contending that the issued serial number for the registered device had never been "affixed or indicated" on the device in question within the meaning of § 10–411(c).[5]

---

Recorder, Model # SCR505, another Panasonic Recorder, Model # AG6730, and a Marantz Recorder, Model # PMD221. The only item of concern in this appeal is the first item, the "Panasonic Recorder, Model Rn 36."

**4.** We so qualify this statement only because the record in this case does not contain any transcripts of the conversations in question. Moreover, the State indicated in its "Answer to Defendant's Motion for Discovery and Inspection" that Petitioner "made an oral statement or confession, to a State Agent the substance of which is as follows: See attached." Nothing is attached, however, to the copy of the State's Answer as included in the record and provided to this Court.

**5.** The State presented no testimony that the State Police "affixed or indicated" an issued serial number on the Panasonic mini-cassette recorder used by Wilhelm to record the electronically intercepted conversation on February 4, 1996. Special Agent Thomas J. McNamara of the F.B.I., however, was called by the defense at the suppres-

## B.

The trial court granted Petitioner's motion to suppress the February 4, 1996 recording, ruling as follows:

Obviously, to me, sure, there was a serial number on the equipment. It was the manufacturer's serial number. It is not the number contemplated by the statute, and that, I think, is what turns the trick in favor of the defendant.

There is no way that that equipment was ever marked with the Maryland State Police issued number BA1786. It was never affixed to the item of equipment, nor as far as I know, any of the other equipment.

So it seems to me it is absolutely fatal to the State's introduction of this tape. It doesn't come in.

It passes on every other standard, every other question we examined it on, but it doesn't come in because it was not registered pursuant to 10–411, Sub-section C, end of case.[6]

The State filed an interlocutory appeal to the Court of Special Appeals, invoking § 12–302(c)(3) as its authority to do so.[7] Whether the State had the right to file such an appeal

---

sion hearing and testified that an issued serial number was never affixed.

**6.** In his Motion to Suppress, Petitioner raised other grounds in addition to the State's alleged violation of § 10–411. The motions court, however, based its ruling solely on its interpretation of the Wiretapping and Electronic Surveillance Act, in particular § 10–411(c).

**7.** Section 12–302 provides in pertinent part:

(c) In a criminal case, the State may appeal as provided in this subsection.

\* \* \* \* \* \*

(3) (i) In a case involving a crime of violence as defined in § 643B of Article 27, and in cases under §§ 286 and 286A of Article 27, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights.

(ii) The appeal shall be made before jeopardy attaches to the defendant. However, in all cases the appeal shall be taken no more

under Maryland law was not argued by either party before the intermediate appellate court, nor did the court, in its unreported opinion, address the issue in any other way than to acknowledge that the State's appeal was interlocutory, along with a footnote citing to and quoting § 12–302(c)(3). The Court of Special Appeals held that the resolution of the State's appeal of the trial court's grant of suppression was controlled by *Battaglia v. State,* 119 Md.App. 349, 705 A.2d 36 (1998), a decision unavailable to the Circuit Court at the time of its ruling.[8] The *Battaglia* court had determined that

> the registration requirement outlined in § 10–411, as the State contends, is a provision intended to facilitate administrative goals. We find nothing within the legislative history or the language of the Act to indicate that the General Assembly intended violations of this provision to result in

than 15 days after the decision has been rendered and shall be diligently prosecuted.

(iii) Before taking the appeal, the State shall certify to the court that the appeal is not taken for purposes of delay and that the evidence excluded or the property required to be returned is substantial proof of a material fact in the proceeding. The appeal shall be heard and the decision rendered within 120 days of the time that the record on appeal is filed in the appellate court. Otherwise, the decision of the trial court shall be final.

(iv) If the State appeals on the basis of this paragraph, and if on final appeal the decision of the trial court is affirmed, the charges against the defendant shall be dismissed in the case from which the appeal was taken. In that case, the State may not prosecute the defendant on those specific charges or on any other related charges arising out of the same incident.

(v) Pending the prosecution and determination of an appeal taken under paragraph (1) or (3) of this subsection, the defendant shall be released on personal recognizance bail. If the defendant fails to appear as required by the terms of the recognizance bail, the trial court shall subject the defendant to the penalties provided in Article 27, § 12B.

(vi) If the State loses the appeal, the jurisdiction shall pay all the costs related to the appeal, including reasonable attorney fees incurred by the defendant as a result of the appeal.

8. The Circuit Court ruled on Respondent's motion to suppress on November 17, 1997. The Court of Special Appeals did not file its decision in *Battaglia v. State,* 119 Md.App. 349, 705 A.2d 36 (1998), until January 28, 1998.

the suppression of evidence. Therefore, the State was not required to prove that the device was registered, and the trial court did not err in admitting the evidence. It goes without saying that every device obtained to intercept and record wire, oral, and electronic communications is to be registered pursuant to Maryland law. Whether the device was registered, however, does not affect the admission of the recorded communication as evidence. Admissibility is governed by § 10–408. Thus, because the registration requirement does not affect the admission of evidence, the party seeking to introduce the recording is not required to prove the device is registered pursuant to § 10–411 before having the recording admitted into evidence.

*Id.* at 356, 705 A.2d at 39–40.

In direct reliance on *Battaglia,* the Court of Special Appeals rejected Petitioner's claim that the cassette recording of his February 4, 1996 conversation with Wilhelm was suppressed correctly by the trial court based upon the State's failure to comply with the affixation requirement of § 10–411(c). Accordingly, the court reversed the trial court's judgment, ruling that "[u]nder *Battaglia,* the recording of [Derry]'s conversation is admissible." We granted Derry's petition for certiorari, which presented the following question:

Did the suppression court correctly grant Derry's motion to suppress a tape recorded conversation based on its finding that the device used for the interception and recording was not properly registered in compliance with Section 10–411 of the Courts and Judicial Proceedings Article?

After oral argument before this Court and subsequent to our initial conferencing of the suppression issue upon which we granted certiorari, it became clear that there was a genuine issue as to whether the State is authorized to appeal the suppression of an intercepted communication at an interlocutory stage of the trial proceedings where the suppression was ordered pursuant to the Maryland Wiretapping and Electronic Surveillance Act (hereinafter referred to by its full name, or "the Wiretap Act," "the Maryland Act," or "the Act"). That

this issue had not yet been raised or argued during judicial review of the present case was of no weight given that the existence *vel non* of the State's right of appeal directly involves the subject matter jurisdiction of the Court of Special Appeals in hearing and deciding this case in the first place. As we stated in *Stewart v. State*, 287 Md. 524, 527–28, 413 A.2d 1337, 1339 (1980), "the lack of [subject matter] jurisdiction may be raised at any time, including initially on appeal." Moreover, the issue of subject matter jurisdiction need not be raised by a party, but may be raised by a court *sua sponte. See Duffy v. Conaway*, 295 Md. 242, 254–55 n. 8, 455 A.2d 955, 961 n. 8 (1983) (reiterating that subject matter "jurisdiction is a matter which, if noticed, will be addressed by a court even though it was not raised by any of the parties" (citing *Biro v. Schombert*, 285 Md. 290, 293, 402 A.2d 71 (1979); *Smith v. Taylor*, 285 Md. 143, 147, 400 A.2d 1130 (1979); *State v. McCray*, 267 Md. 111, 126, 297 A.2d 265 (1972))). We therefore rescheduled this case for supplemental briefing and reargument by Petitioner and the State concerning the following question:

Whether the State is authorized under the language of Maryland Code (1974, 1998 Repl.Vol.), Section 12–302(c)(3) of the Courts and Judicial Proceedings Article, or under any other law, to appeal from an order of a circuit court, entered pursuant to Sections 10–405 and 10–408(i) of the Courts and Judicial Proceedings Article, suppressing the contents of a wire, oral, or electronic communication on the ground that the communication was intercepted in violation of the Maryland Wiretapping and Electronic Surveillance Act?

If the answer to this question is negative, the Court of Special Appeals lacked jurisdiction over the instant case. The consequences of such would be that our grant of certiorari would be rendered improvident and that we would be compelled to dismiss the present appeal.

## II.

■ With the refocusing of our inquiry upon the threshold issue of appellate subject matter jurisdiction, the case before

us essentially boils down to a question of statutory interpretation involving two separate provisions of the Courts and Judicial Proceedings Article, namely § 10–408(i) within the Wiretap Act, and § 12–302(c).[9] Of utmost importance is the fact that the Circuit Court's order of suppression was grounded solely upon the Wiretap Act. Although, as noted earlier, Petitioner offered other bases for his motion to suppress, including some constitutional claims, the suppression hearing focused entirely upon the statutory provisions under the Act. Again, however, the State did not rely upon the Wiretap Act in filing its interlocutory appeal of the suppression court's decision, but instead invoked § 12–302(c).

 As this Court repeatedly has made clear, the paramount goal of statutory interpretation is to identify and effectuate the legislative intent underlying the statute(s) at issue. *See Robinson v. State,* 353 Md. 683, 694, 728 A.2d 698, 703 (1999); *Blondell v. Baltimore Police,* 341 Md. 680, 690, 672 A.2d 639, 644 (1996). The legislative intent of a statute primarily reveals itself, through its very own words. *See Harris v. State,* 353 Md. 596, 606, 728 A.2d 180, 184 (1999); *Marriott Employees v. MVA,* 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997). As a rule, we view the words of a statute in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood. *See Sacchet v. Blan,* 353 Md. 87, 92, 724 A.2d 667, 669 (1999); *Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995). If the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise: we need investigate no further but simply apply the statute as it reads. *See Marriott Employees,* 346 Md. at 445, 697 A.2d at 458.

---

9. The State also argues that there exists a common law ground for its interlocutory appeal of the suppression in this case, asserting that the Circuit Court "exceeded its jurisdiction in granting [Petitioner]'s motion to suppress based solely on the State's failure to affix a registration number to the recording device used to tape [Petitioner]'s incriminating conversation," pursuant to § 10–411(c). We find no merit in this argument.

Even so, we do not view the plain language of a statute in a vacuum. As we have often reiterated,

> While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears.

*Degren v. State,* 352 Md. 400, 417, 722 A.2d 887, 895 (1999) (quoting *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992) and omitting citations).

Our construction of the two statutes involved in the present case need not venture far beyond their text. Despite a theoretically arguable ambiguity in one of the statutes, we believe the plain language of each unmistakably manifests its legislative intent.

Both Petitioner and the State acknowledge that although the Wiretap Act expressly allows for the exclusion of evidence, *see* §§ 10–405 and 10–408(i), it provides no right of appeal of a trial court's decision on a motion to suppress. The only explicit provision for an appeal under the Act states,

> In addition to any other right to appeal, *the State shall have the right to appeal from the denial of an application for an order of approval,* if the prosecuting attorney shall certify to the judge or other official denying the application that the appeal is not taken for purposes of delay. The appeal shall be taken within 30 days after the date the order was entered and shall be diligently prosecuted.

§ 10–408(i)(3) (emphasis added). The Act thus lacks any express provision authorizing the State to appeal a trial court's grant of suppression pursuant to §§ 10–408(i)(1) and (2).[10] *See Mossburg v. Montgomery County,* 329 Md. 494, 505,

---

**10.** Sections 10–408(i)(1) and (i)(2) provide in pertinent parts as follows:

(i) *Suppression of contents of communication; appeal from denial of application for order of approval.*—(1) Any aggrieved person in any

620 A.2d 886, 892 (1993). ("This Court has regularly held that where the Legislature in a statute expressly authorizes a particular action under certain circumstances, the statute ordinarily should be construed as not allowing the action under other circumstances." (Citations omitted)).

Nor could such a right of appeal reasonably be implied in light of certain legislative history leading up to the Wiretap Act's original passage in 1977. At one point during its drafting, § 10–408(i)(3) included the following provision: "[T]he State shall have the right to appeal from *an order granting a motion to suppress made under paragraphs (1) and (2) of this subsection, or* the denial of an application for an order of approval. . . ." The italicized text, however, was excised entirely from the statute before its enactment. *See* 1977 Laws of Maryland, Ch. 692, § 3, at 2815. Hence, its explicit language and the unmistakable intention implicit in its legislative history irrefutably indicate that § 10–408(i) of the Wiretap Act in no way enables the State to appeal immediately the suppression of evidence based thereunder.

■ Unfortunately for the State, it can fare no better under § 12–302(c)(3) which empowers the State to file an interlocutory appeal of a trial court's grant of a motion to suppress evidence, yet only in certain criminal cases and under strictly

---

trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of this State or a political subdivision thereof, may move to suppress the contents of any intercepted wire, oral, or electronic communication, or evidence derived therefrom, on the grounds that:

(i) The communication was unlawfully intercepted;

(ii) The order of authorization under which it was intercepted is insufficient on its face, or was not obtained or issued in strict compliance with this subtitle; or

(iii) The interception was not made in conformity with the order of authorization.

(2) This motion may be made before or during the trial, hearing, or proceeding. If the motion is granted, the contents of the intercepted wire, oral, or electronic communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this subtitle.

limited circumstances. The statute provides in pertinent part as follows:

### § 12–302. Right of appeal from final judgments—Exceptions.

\* \* \* \* \* \*

(c) in a criminal case, the State may appeal as provided in this subsection.

\* \* \* \* \* \*

(3) (i) in a case involving a crime of violence as defined in § 643B of Article 27, and in cases under §§ 286 and 286A of Article 27, *the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights.* [Emphasis added.[11]]

The crux of the proper construction of this statute lies in the meaning of the text we have italicized immediately above. Both parties recognize that our analysis depends principally upon whether the phrase "alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights" modifies both "evidence offered by the State" and "property" or, conversely, qualifies only the latter term. It is, of course, predictable that the parties stand on opposite sides of these two possible interpretations.

Petitioner asserts that the plain language of § 12–302(c)(3)(i) unambiguously restricts the State's authority to appeal a trial court's exclusion of evidence to those cases in which, *inter alia,* the court's exclusion is based upon a "violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights." *Id.*

---

11. The remaining provisions of § 12–302(c)(3), which bear some relevance to our analysis later in this section, are reproduced *supra* note 7.

The State counters that its license to appeal a suppression order is much broader in the criminal cases specified. Seizing . upon § 12–302(c)(3)(i)'s employment of the conjunction "or," the State argues that the key phrase regarding state and federal constitutional violations, by virtue of its disjunctive separation from "a decision of a trial court that excludes evidence offered by the State," *id.*, limits only the State's authority to appeal a court's decision that "requires the return of property," *id.*

We agree with Petitioner. The General Assembly patently intended that the limitation of interlocutory appeals to issues of constitutional magnitude apply to a trial court decision that *either* "excludes evidence" or "requires the return of property." The disjunction focused upon by the State between these two phrases relates only to their representing the two distinct subject matters of a criminal defendant's pretrial motion(s) whose granting by the court may possibly be appealed by the State on an interlocutory basis. The trial court's exclusion of evidence or requirement that property be returned are conjoined, however, in the respect that the court's finding of a constitutional violation is a necessary precondition to the availability to the State of an interlocutory appeal in the specified criminal cases.

As a purely textual matter, § 12–302(c)(3)(i)'s limitation of interlocutory appeals to decisions of constitutional law could certainly apply exclusively to return of property cases. We can see no sensible reason, however, why the Legislature would have embraced such an intention. Decisions requiring the return of property appear to embody no significant legal distinction from judgments of evidentiary exclusion so as to restrict the availability of interlocutory appeal for the former more so than for the latter. Moreover, it cannot be doubted, first, that the number of criminal prosecutions involving a court-ordered return of property is far lower than those in which the court issues a pretrial order excluding evidence and, second, that a court's requiring the State to return property would very, if not most, often be based on constitutional

principles,[12] while a trial court may exclude evidence on a myriad of non-constitutional grounds.[13] Hence, to the extent that a concern for judicial economy partially underlies § 12–302(c), return of property decisions would not appear to warrant a more stringent limitation of immediate access to appellate review.

Reading § 12–302(c)(3), to permit the State to challenge by interlocutory appeal only constitutionally based exclusions of evidence is more consonant with the long-time unavailability of interlocutory appeals that served as precedent to the statute's original passage in 1982. Prior to that year, Maryland law afforded the State no opportunity to pursue an interlocutory appeal in a criminal case. It was against this backdrop that the General Assembly determined to create a right of interlocutory appeal for the State in only a limited number of criminal prosecutions while explicitly restricting this right in other ways. Because, again, evidentiary rulings arise innumerably during litigation between the State and criminal defendants, bestowing upon the prosecution the right to challenge every such ruling, even with the proviso that all other prerequisites

---

**12.** For instance, Maryland Code (1957, 1996 Repl.Vol., 1999 Supp.), Article 27, § 551(a) provides for the return of property seized under an improperly executed, defective or expired search warrant, stating, "If, at any time, on application to a judge of the circuit court of any county or judge of the District Court, it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, or that the property was taken under a warrant issued more than 15 calendar days prior to the seizure, said judge must cause it to be restored to the person from whom it was taken."

**13.** For instance, in addition to suppressing evidence under the Fourth, Fifth, or Sixth Amendments of the United States Constitution, trial courts presiding over criminal prosecutions routinely exclude evidence on the adjudged basis that it is irrelevant, *see* Maryland Rule 5–402, or that it is unduly prejudicial, *see* Rule 5–403, or that it comprises inadmissible character evidence, *see* Rule 5–404, or that it violates the hearsay rule, *see* Rule 5–802, or that it fails to meet the requirements of a hearsay exception, *see* Rules 5–802.1, 5–803, and 5–804, or, finally, that it constitutes privileged material, *see, e.g.,* Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.), §§ 9–108 and 9–109 of the Courts and Judicial Proceedings Article—just to provide a non-exhaustive sample.

within § 12–302(c)(3) must be satisfied, would reflect an expansiveness directly contrary to the Legislature's ostensibly cautionary approach. We therefore believe the more reasonable interpretation of § 12–302(c)(3) is that its limitation to constitutional issues, like all other limitations within the statute, applies to every exercise by the State of its right to interlocutory appeal.

Although we find that the language of § 12–302(c)(3)(i) reveals a legislative intent to deny the State a right of interlocutory appeal of a trial court's exclusion of evidence on non-constitutional grounds, the legislative history brought to this Court's attention by the State only confirms, rather than dispels, the correctness of our determination. The State points out that within the Department of Legislative Reference's bill file on Senate Bill 39, the 1982 legislative proposal to create § 12–302(c)(3), *see* 1982 Laws of Maryland, Ch. 493, there appears a summary explaining the effect of the proposed amendment as follows:

> The bill allows the State to appeal from a pretrial ruling by the Court to *exclude evidence obtained in violation of the defendant's constitutional rights.* The bill is aimed at those cases in which the Judge excludes a defendant's confession, physical evidence (such as drugs), or any evidence which is at the heart of the State's case. The State may not take the appeal unless it certifies that the evidence is "substantial proof of a material fact in the proceeding."

Bill File Document entitled "S.B. 39—*Criminal Cases—State's Right to Appeal,*" at 1 (emphasis added). This passage strongly refutes the State's position before this Court that § 12–302(c)(3)(i) was aimed at allowing the State an interlocutory appeal of *any* exclusion of evidence critical to the prosecution. On the contrary, the legislative history of § 12–302(c)(3) makes all the more evident that through its enactment the General Assembly sought to subject to immediate judicial review at the State's request only constitutionally based suppressions.

■ The State offers an alternative rationale for maintaining its right to an interlocutory appeal of the Circuit Court's grant of suppression. It contends that if, as we hold, § 12–302(c)(3)(i) requires in part that a trial court's exclusion of evidence be based on state or federal constitutional grounds in order for the State's right to file an interlocutory appeal to vest, a suppression based upon the Wiretap Act suffices for such purposes because of its "constitutional underpinnings." Specifically, the State argues,

> The ultimate purpose of the statutory scheme established by Maryland's Wiretap Act is to protect constitutional privacy interests.

* * * * * *

> Because suppression under the Wiretap Act is designed to further important constitutional interests, the grant of a suppression motion under the Act should be construed to fall within the ambit of Section 12–302(c)(3).

* * * * * *

> The harsh remedy of suppression of reliable evidence is presumably available under the Act only because of the constitutional underpinnings of the Act.

Supplemental Brief of Respondent at 8–9 (citations omitted).

We reject this argument. It is true that specific provisions of the Wiretap Act purposely contain minimum protections of the constitutional rights to privacy of Maryland citizens. This Court has itself made such an observation on earlier occasions. *See, e.g., State v. Bailey,* 289 Md. 143, 153–54, 422 A.2d 1021, 1027 (1980). Yet we have likewise explained that a good many of the provisions in the Act were intended to safeguard the privacy of certain communications in this State in ways more substantial than ensured by the United States and Maryland Constitutions or by the federal statutory precursor to the Wiretap Act, namely Title III of the Omnibus Crime Control and Safe Streets Act, which was passed in 1968, *see* Pub.L. No.90–351, tit. III, §§ 801–04, 82 Stat. 197, and codified at

that time as 18 U.S.C. §§ 2510–2520 (hereinafter "Title III"). *See Mustafa v. State,* 323 Md. 65, 69, 591 A.2d 481, 483 (1991); *Wood v. State,* 290 Md. 579, 583, 431 A.2d 93, 95 (1981); *State v. Baldwin,* 289 Md. 635, 641, 426 A.2d 916, 920 (1981). *See also* Richard P. Gilbert, *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* 8 U. Balt. L.Rev. 183, 220–21 (1979) (stating that the Wiretap Act "as written guarantees to the people of Maryland, insofar as the state, itself, is concerned, greater protection from surreptitious eavesdropping and wiretapping than that afforded the people by the Congress.").[14] For instance, while it is both constitutionally permissible, *see Lopez v. United States,* 373 U.S. 427, 438–40, 83 S.Ct. 1381, 1387–89, 10 L.Ed.2d 462 (1963),[15] as well as lawful under Title III, *see* 18

---

**14.** Title III sets out federally mandated minimum standards governing the interception and use of oral, wire and electronic communications. State laws may be more restrictive than the federal law, but may not be less restrictive. *See* 18 U.S.C. § 2516(2); *Mustafa v. State,* 323 Md. 65, 69, 591 A.2d 481, 483 (1991); *State v. Mayes,* 284 Md. 625, 627–28, 399 A.2d 597, 599 (1979). Although the Maryland Act was modeled on the federal statute and closely tracks its provisions, the Maryland Legislature made several of the provisions of the Act more restrictive than their federal counterparts. *See Mustafa,* 323 Md. at 69, 591 A.2d at 483; *State v. Baldwin,* 289 Md. 635, 641, 426 A.2d 916, 920 (1981).

**15.** In *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), the United States Supreme Court considered a challenge under the Fourth Amendment to the admissibility of a tape-recording of a conversation between the defendant and a government agent that was made by the agent by use of a device planted on his person. In rejecting this constitutional challenge, the Court ruled as follows:

Once it is plain that [the government agent] could properly testify about his conversation with [the defendant], the constitutional claim relating to the recording of that conversation emerges in proper perspective. The Court has in the past sustained instances of "electronic eavesdropping" against constitutional challenge, when devices have been used to enable government agents to overhear conversations which would have been beyond the reach of the human ear. See, e.g., *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944; *Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected area. *Silverman v. United States,* [365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734]. The validity of these decisions is not in question here. Indeed this case involves no "eavesdropping" whatever in any

**344**

U.S.C. § 2511(2)(c) and (d), to intercept and record a conversation as long as at least one party consents to such and the purpose for such is not otherwise unlawful, the Maryland Act generally requires the prior consent of all parties to a conversation in order for any interception or recording thereof to be lawful, see § 10–402(c)(3).

It may be the case that § 10–411, the provision of the Wiretap Act originally in question in the present case, was also designed to further the goals of protecting individual persons' privacy interests. However true that may be, § 10–411, as the State concedes, was not itself designed to ensure *constitutional* rights to privacy. The Wiretap Act's inclusion of provisions furthering interests and rights not constitutional-

------

proper sense of that term. The Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose. And the device was not planted by means of an unlawful physical invasion of petitioner's premises under circumstances which would violate the Fourth Amendment. It was carried in and out by an agent who was there with petitioner's assent, and it neither saw nor heard more than the agent himself.

\* \* \* \* \* \*

Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. For no other argument can justify excluding an accurate version of a conversation that the agent could testify to from memory. We think the risk that petitioner took in offering a bribe to [the government agent] fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording.

\* \* \* \* \* \*

When we look for the overriding considerations that might require the exclusion of the highly useful evidence involved here, we find nothing. There has been no invasion of constitutionally protected rights, and no violation of federal law or rules of procedure. Indeed, there has not even been any electronic eavesdropping on a private conversation which government agents could not otherwise have overheard. There has, in short, been no act of any kind which could justify the creation of an exclusionary rule.

*Id.* at 438–40, 83 S.Ct. at 1387–89 (footnote omitted).

ly required undermines the State's alternative argument in this case. Because the Act does not merely codify constitutional requirements in the area of communications privacy, violations of certain of its provisions, like § 10–411, constitute statutory transgressions and nothing more. As we have already determined, a suppression decision pendent upon a violation of statutory law alone cannot trigger the State's right to interlocutory appeal under § 12–302(c)(3).[16]

Furthermore, as discussed earlier, prior to enacting the Wiretap Act in 1977, the Legislature deliberately struck from § 10–408(i) the right of the State to appeal instantly a suppression of evidence based upon a violation thereunder. If, in passing § 12–302 in 1982, the General Assembly were intending to reverse its legislative judgment five years earlier that the State should not be afforded the right to immediately appeal the granting of a motion to suppress based upon the Wiretap Act, we do not believe it would have done so in such an oblique and cryptic manner. We thus do not, as the State would have us, view § 12–302(c)(3)(i) as abstrusely filling in supposed "gaps" in the interlocutory review of court-ordered suppressions of intercepted communications when those "gaps" were intentionally left open by the Wiretap Act itself. Again, interlocutory appeals have always been, and still remain, the exception rather than the rule. It is not the province of this Court, but that of the Legislature, if it deems such action appropriate, to add to the limited list of those decisions subject to interlocutory judicial review a trial court's suppression of evidence under the Wiretap Act.

## III.

 In light of our decision that, as a matter of procedure, the State did not have the right to file an interlocutory appeal of the grant of suppression in this case, there technically is no

---

**16.** As the issue is not before us, we need not decide whether a trial court's decision to suppress, if hinged explicitly and exclusively upon a statutory violation that would simultaneously comprise a constitutional violation, would fall within the ambit of § 12–302(c)(3)(i).

substantive matter before this Court. We nevertheless are compelled to address a critical threshold issue underlying the State's original appeal. Although not decided by the trial court nor argued by either party during each's respective appeal, this issue warrants our attention given the absence heretofore of any ruling by this Court concerning § 10–411 [17] and in light of certain pronouncements by the Court of Special Appeals with respect to this statutory provision. In short, the State is *not* compelled by Maryland law, contrary to existing precedent in force in courts below, to register *"every* device obtained to intercept and record wire, oral, and electronic communications," *Battaglia v. State,* 119 Md.App. 349, 356, 705 A.2d 36, 40 (1998) (emphasis added). Rather, law enforcement agencies and officials in Maryland are required to register only those devices "whose design renders them *primarily* useful for the purpose of the *surreptitious* interception of wire, oral, or electronic communications which are owned by them or possessed by or in the control of the agency, their employees or agents." § 10–411(a) (emphases added).

We note for guidance in future cases involving evidence of a communication obtained through wiretapping or electronic surveillance that the applicability of § 10–411 to the particular equipment used to intercept and record that communication is an important threshold inquiry for Maryland trial courts to consider in deciding a motion to suppress filed pursuant to the Wiretap Act. For instance, in the present case, it is questionable whether the Panasonic micro-cassette recorder, model number Rn 36, used by Wilhelm to intercept and record Petitioner's inculpatory statements, is the type of device that must be registered under § 10–411. It may in fact fall outside the class of devices circumscribed by the Legislature in initially passing the Wiretapping and Electronic Surveillance Act of 1977. In other words, the device used by Wilhelm may not be

---

**17.** In one prior case we mentioned § 10–411 of the Courts and Judicial Proceedings Article. *See Kassap v. Seitz,* 315 Md. 155, 161 n. 3, 553 A.2d 714, 716 n. 3 (1989). Our reference to the statute in that case, however, was simply to note that the registration requirement thereunder had apparently been satisfied.

an item whose design renders it *primarily useful for surreptitious interception.* If so, the State never had any duties under § 10–411 with respect to the recorder in the first place.[18]

Petitioner asserts that "there can be no misinterpretation of the legislative intent of the requirement of the registration of *every* device obtained to intercept and record wire, oral, and electronic communications." (Emphasis added.) Petitioner's position is grounded on the same general misconception expressed in *Battaglia* that *all* devices capable of intercepting or recording wire, oral, or electronic communications are circumscribed by Maryland's wiretap and electronic surveillance law. Under such a regime, law enforcement agencies and officials in Maryland could not even possess, let alone use in their investigations, *any* intercepting or recording device without registering it with the State Police within ten days of coming into its possession. *See* § 10–403(b)(4) (requiring police authorities to register all covered recording devices with the State Police in accordance with § 10–411 in order to render their mere possession of such devices lawful under the statute). Were such the law, untold numbers of clerks, secretaries, and officers in police departments throughout this State would be forbidden to keep at their desks run-of-the-mill stereo/tape recorders unless they register them. Such results could hardly have been the intent of the General Assembly in passing the Wiretapping and Electronic Surveillance Act of 1977.

As noted earlier, Maryland's Wiretap Act was closely modeled on Title III of the Omnibus Crime Control and Safe

---

18. Despite the possibility that the Panasonic micro-cassette recorder used by Wilhelm to intercept and record his February 4, 1996 conversation with Petitioner may not fall within the definition of devices whose usage by law enforcement officials and agents is subject to compliance with § 10–411 in order to be lawful, it must be remembered that the State never raised this issue before the Circuit Court, or, for that matter, at any time on appeal. Were we to consider the merits of the petition for certiorari, we would therefore be compelled to assume that the device used to intercept and record Petitioner's incriminating statements was subject to § 10–411's requirements.

Streets Act, passed by the United States Congress in 1968.[19] In proscribing the possession, manufacture, assembly and sale of certain electronic surveillance devices, the Wiretap Act employs virtually the exact same definition as the federal statute, aside from the commercial or mail nexus constitutionally required for the federal regulation.[20] And although Title III does not contain a provision requiring the registration of intercepting and recording devices used by police authorities in their investigation of crime, the registration requirement in the Maryland Act tracks almost identically the language of the federal statute as it relates to defining such devices.[21]

Various federal courts' interpretation of the type of device whose design renders it "primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications" under 18 U.S.C. § 2512(1)(b) may well prove instructive as to the appropriate interpretation of the identical language found in § 10–411(a), directly reflecting the latter's

---

**19.** *See supra* note 14.

**20.** *Compare* § 10–403(a)(1), which subjects to felony prosecution, fine and imprisonment any person who, unless expressly excepted,

> manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that *the design of the device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications* .... [Emphasis added.]

with 18 U.S.C. § 2512(1)(b), which subjects to fine and imprisonment any person who, unless expressly excepted, intentionally

> manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that *the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications,* and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce.... [Emphasis added.]

**21.** *Compare* § 10–411(a), reproduced *supra* note 2, with 18 U.S.C. § 2512(1)(b), reproduced in the immediately preceding footnote. As can readily be seen, the only differences between the pertinent wording of Title III's and the Wiretap Act's general ban of primarily surreptitious interception devices, under 18 U.S.C. § 2512(1)(b) and § 10–403(a)(1), respectively, and the language of Maryland's registration requirement for police usage of such devices, in § 10–411(a), are stylistic rather than substantive.

purposeful borrowing from Title III. *See Kassap v. Seitz,* 315 Md. 155, 164–65, 553 A.2d 714, 718 (1989) (explaining that because "[w]e have often recognized that the Act finds its genesis in and is substantially patterned after Title III . . . we have on occasion sought guidance from federal cases interpreting or applying Title III" (citing *Ricks v. State,* 312 Md. 11, 15, 21–24, 537 A.2d 612, 614, 616–18 (1988) and other cases)). *Cf. Beatty v. Trailmaster,* 330 Md. 726, 738 n. 8, 625 A.2d 1005, 1011 n. 8 (1993) (reiterating that where Maryland rule is derived from federal rule, judicial interpretations of federal rule are persuasive as to meaning and proper application of Maryland rule).

The federal Courts of Appeal that have been called upon to construe the meaning of the phrase "primarily useful for . . . surreptitious interception" have made clear that its language contemplates a fairly narrow range of intercepting and recording devices. For example, in *United States v. Shriver,* 989 F.2d 898 (7th Cir.1992), in considering Title III's application to modified or "cloned" satellite television descramblers, the Seventh Circuit explained that

> Congress expanded the scope of [18 U.S.C. § ] 2512 in 1986 to include electronic communications. Congress, though, left untouched the rest of the statute, including the terms "surreptitiously" and "primarily" that are found in both § 2512(1)(a) and (b). Therefore, as it exists today, § 2512 still pertains to only a small category of electronic devices the designs of which render them sufficiently invasive or devious in purpose to warrant criminal prosecution. . . .

*Id.* at 905.

We also draw attention to a particularly insightful passage from the Fifth Circuit's decision in *United States v. Schweihs,* 569 F.2d 965 (5th Cir.1978), where the unanimous three-judge panel reasoned:

> Section 2512(1)(b) is narrowly drawn. It renders criminally liable "any person who willfully . . . possesses . . . any electronic . . . device, knowing or having reason to know that the design of such device renders it primarily useful for

the purpose of the surreptitious interception of wire or oral communications...." This statutory language reflects a careful and studied congressional decision to leave untouched the production, distribution, and possession of electronic equipment designed for regular use in varied nonsurreptitious activities, even though the equipment is capable of being used in a surreptitious manner, and yet to ban a narrow category of devices which by virtue of their design characteristics are *primarily* useful for eavesdropping and wiretapping.

The statute's legislative history reveals that Congress intended to ban such devices as martini olive transmitters, spike mikes, and microphones disguised as wristwatches and fountain pens, without prohibiting possession of a legitimate electronic device merely because it is small or may be used for wiretapping or eavesdropping. "To be prohibited, the device ... [must] possess attributes that give predominance to the surreptitious character of its use, such as the spike in the case of the spike mike or the disguised shape in the case of the martini olive transmitter...." S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin. News, pp. 2183–2184.

*Id.* at 968 (alterations in original) (footnote omitted).

Because some of the language in the opinion of the Court of Special Appeals in *Battaglia v. State,* 119 Md.App. 349, 705 A.2d 36 (1998), runs directly counter to the plain language of the Wiretap Act with respect to the types of devices requiring registration thereunder, that part of the opinion is hereby disapproved.[22]

---

22. Insofar as the present case has not required us to address the merits of whether a violation of § 10–411 may be the basis for a trial court's suppression of evidence under the Wiretap Act, we express no opinion on the correctness of the holding by the Court of Special Appeals in *Battaglia v. State,* 119 Md.App. 349, 356, 705 A.2d 36, 40 (1998), that whether an electronic surveillance device used to intercept and record a communication complies with § 10–411's registration requirement "does not affect the admission of the recorded communication as evidence."

## IV.

Based on all the considerations discussed in Part II above, we hold that the State lacked authority under § 12–302(c)(3) to file an interlocutory appeal of the Circuit Court's decision to suppress Petitioner's conversation with confidential police informant Charles Wilhelm on account of the court's determination that the State failed to comply with a purely statutory requirement within § 10–411(c). Because the State possessed no other authority under the law of Maryland to file an interlocutory appeal in the present case, the Court of Special Appeals should have dismissed the appeal.

BELL, C.J., concurs in part.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE STATE'S APPEAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.*

BELL, C.J., joins in Parts I, II and IV of the opinion and concurs in the judgment of the Court.