Dear The Honorable John Olszewski
On behalf of the Baltimore County Council, you have asked our interpretation of a part of the State law that governs an individual's transfer between public retirement systems in Maryland. Your question relates to a member who transfers service credit from anoncontributory retirement system to a contributory retirement system. Under Annotated Code of Maryland, State Personnel and Pensions Article ("SPP"), § 37-203(f)(2), the contributory retirement system to which the member is transferring (the "transferee system" or "new system") is required to reduce the retirement allowance that the individual will receive "by the actuarial equivalent of the accumulated contributions that would have been deducted if the individual had earned the transferred service credit under the new system, including interest onthose contributions." (emphasis added). You focus on the final phrase of this provision and ask what rate of interest should be applied. You state that the County has received contradictory guidance from the State Retirement Agency and the Baltimore County Attorney with respect to the correct interest rate.
For the reasons that follow, it is our opinion that the interest rate referenced in the statute is the interest rate payable by the transferee system on member contributions — a rate that is often referred to as the "regular" rate of interest.
 I Background
To enhance the portability of public pension accounts, Title 37 of SPP allows members to transfer among State and local pension plans in Maryland and receive pension credit in their new system for service in their prior system. Morris v. Prince George's County, 319 Md. 597,608-609, 573 A.2d 1346 (1990) (discussing the predecessor to Title 37, Former Article 73B, § 33). Generally, when a public employee in
Maryland accepts new employment that (a) requires or allows the member to participate in a different public retirement system, and (b) does not permit continued participation in the member's prior system, the member may elect to transfer service credit from the first system to the second. SPP § 37-202(a). Upon transfer, the individual begins payment of the contributions required of a member of the new system, if any, and becomes eligible for a benefit under the terms of the new system, taking into account the transferred service credit. See, e.g., § 37-203(f)(1).
Title 37 outlines different procedures to be followed when a member is transferring between two contributory systems, between two noncontributory systems, or between a contributory and a noncontributory system.[1] In a contributory system, members are required to help fund the cost of their retirement benefits through contributions deducted from the member's salary.[2] Those contributions typically accumulate in the member's account in the annuity savings fund (or comparable fund) of the retirement system, together with regular interest that the system periodically credits to that account. See SPP § 21-311 and SPP § 20-101(ii). Other systems are "noncontributory" — that is, benefits are not funded from member contributions deducted from compensation.[3]
When an individual transfers from a noncontributory system to acontributory system, the statute states that "the individual's retirement allowance shall be reduced by the actuarial equivalent of the accumulated contributions that would have been deducted if the individual had earned the transferred service credit under the new system, including interest on those contributions." SPP § 37-203(f)(2) (emphasis added). You have asked whether the phrase "interest on those contributions" requires the use of a specific rate of interest, or whether the County Retirement System is free to apply any reasonable rate of interest.
You note that the Baltimore County Retirement System currently uses an interest rate that is equivalent to its assumed rate of return on investments, sometimes referred to as a "valuation interest rate."See Baltimore County Retirement System, Transfer Policy § II.B.2. This estimated rate of return on investments is one of many actuarial assumptions adopted by the County Retirement System for use in its annual valuations, in order to determine the amount of annual employer contributions required to fund estimated future benefit payments. You have provided a copy of an opinion by a former Baltimore County Attorney supporting the application of that rate.[4] The County Attorney's advice has been relied on by Baltimore County in support of its use of the valuation rate of return on investments to calculate the "interest on contributions."
 II Analysis
The goal of statutory interpretation is to identify and carry out legislative intent. The starting point is the language of the statute itself. Derry v. State, 358 Md. 325, 335, 748 A.2d 478 (2000). In interpreting a statute, it is also appropriate to consider "the larger
context" and to construe the statute with reference to the "purpose, aim, or policy" of the Legislature. Id. at 336.
A. Statutory Language
 1. SPP § 37-203(f)(2)
The statute provides in pertinent part[5] as follows:
 [I]f an individual transfers from a noncontributory system to a contributory system, on retirement the individual's retirement allowance shall be reduced by the actuarial equivalent of the accumulated contributions that would have been deducted if the individual had earned the transferred service credit under the new system, including interest on those contributions.
SPP § 37-203(f)(2) (emphasis added).[6]
This provision requires a two-part process to compute the required reduction of the individual's retirement allowance in the transferee system. First, one must determine the amount of the contribution deficiency that is to be imputed to the member's account in the annuity savings fund of the transferee system. The provision states that this amount is based upon the "accumulated contributions" that would have been deducted from the individual's pay if he or she had earned the transferred service credit in the contributory system, and further specifies that "interest on those contributions" must be included. Second, once the amount of the imputed contribution deficiency is determined, one must determine
the "actuarial equivalent" of that amount in benefits in order to translate the contribution deficiency into a reduction of the amount of monthly retirement benefits that are paid by the transferee system to the individual.[7]
Although SPP § 37-203(f)(2) does not explicitly state a particular rate of "interest on those contributions," in determining the amount of the contribution deficiency, the statutory definitions of key terms point to the appropriate rate of interest that must be applied to the member's contributions.
 2."Accumulated Contributions" and "Regular Interest"
First, for purposes of SPP § 37-203, the statute defines "accumulated contributions" by reference to SPP § 20-101, the main definition section of Division II of the State Personnel and Pensions Article:
 (1) when used in relation to a State system, has the meaning stated in § 20-101 of this article; and
 (2) when used in relation to a local retirement or pension system, has the meaning most closely analogous to the meaning stated in § 20-101 of this article within the context of the local retirement or pension system.
SPP § 37-101(b). In turn, SPP § 20-101 defines "accumulated contributions" as follows:
 (1) "Accumulated contributions" means the amounts credited to a member's individual account in the annuity savings fund of the appropriate State system.
 (2) "Accumulated contributions" includes:
 (i) member contributions;
 (ii) additional contributions; and
 (iii) regular interest.
SPP § 20-101(b) (emphasis added). Thus, "accumulated contributions" is the cumulative amount of both the required and voluntary contributions made by the member into his or her individual account in the annuity savings fund, as well as the "regular interest" credited by a retirement system to the member's account with respect to those contributions. It is a balance that increases periodically as a result of additional contributions deducted from the member's salary or paid by the member, and the periodic crediting of "regular interest" to that balance.
"Regular interest" is defined in SPP § 20-101(ii) to mean "interest at the rate payable on accumulated contributions as provided under this Division II for each State system." (emphasis added.) The State Legislature sets the regular interest "payable on member accumulated contributions" for each separate state system. See SPP §§ 22-215 (Employees and Teachers Retirement Systems — 4%), 23-213 (Employees and Teachers Pension Systems — 5%), 24-206 (State Police Retirement System — 4%), 25-204 (Correctional Officers Retirement System — 4%), 26-205 (Law Enforcement Officers Pension System — 4% and 5%), 27-203 (Judges Retirement System — 4%), and 28-205 (Local Fire and Police System — 4% and 5%).
Given the definitions of the terms "accumulated contributions" and "regular interest," a transferee system is not free to use any interest rate it wishes when carrying out the first step of the process required by SPP § 37-203(f)(2) — i.e., in imputing a contribution deficiency in the individual's annuity account. Rather, a State transferee system must apply the regular rate of interest — the rate that is used to compute the interest that is credited to the member's annuity savings fund account. A local system, in accordance with SPP § 37-101(b)(2), must use the rate "most closely analogous" to the rate used in the State system — the rate the local retirement system pays on its member contributions. In the case of the Baltimore County Retirement System, we understand that the Board of Trustees of that system currently pays regular interest of 5% on member contributions.
One may question the apparently redundant nature of the process described in SPP § 37-203(f)(2). At first glance, it may appear somewhat superfluous for the statute to specify that "interest on those contributions" must be included, when the phrase "accumulated contributions" is defined to include regular interest. The reason for this apparent duplication is the statute directs a reduction of the "accumulated contributions that would have been deducted." (emphasis added). Although member contributions are deducted from a member's salary, regular interest is credited to the member's account. Thus, the drafters of this provision apparently believed it necessary to further specify that the reduction in benefits should take into account "interest on those contributions."
Viewing this language in light of the statutory scheme, it is our view that "interest on those contributions" is essentially a reiteration of the idea that "accumulated contributions" includes a member's cumulative payroll contributions, plus regular interest credited to the member on those contributions.[8] In that case, it is clear that the interest rate to be applied to the sum of these hypothetical contributions is the "regular" rate of interest in a State system and, in the case of a county system, the rate most closely analogous to the State's "regular" rate of interest. The legislative history of the statute confirms this construction of the statutory language.
B. Legislative History
 1. 1981: Extension of Pension Portability to Various Types of Transfers
The first provision regarding pension portability was enacted in 1947. Chapter 664, Laws of Maryland 1947. However, as public pension systems developed over the years, that law did not cover a number of permutations of possible transfers, including transfers between contributory and noncontributory systems. See Opinions of the AttorneyGeneral 80-053 (August 11, 1980) (unpublished). In 1981, upon the recommendation of the Joint Commission on Pensions, the Legislature extended the provisions governing transfers between State and local retirement systems to permit transfers, without loss of pension benefits, between noncontributory and contributory retirement systems, thereby increasing portability. Chapter 394, Laws of Maryland 1981; Joint Commission on Pensions, 1980 Interim Report to the Maryland General Assembly. Among other things, that law set out ground rules for transfers from a contributory to a contributory system, from a contributory to noncontributory system, from a noncontributory to noncontributory system, and from a noncontributory to a contributory system. See Fiscal Note to House Bill 782 (February 27, 1981). For each permutation, the law sets forth the disposition of employer, and any employee, contributions that had been made to the transferor system, as well as any adjustments to be made by the transferee system.[9]
For example, if an employee transferred from one contributory system to another contributory system, the member's accumulated contributions — defined then, as now, as including "regular" interest[10] — were to be deposited in the annuity savings fund of the transferee system. Former Article 73B, § 32(a)(1) (1978 Repl. Vol., 1981 Cum. Supp.).[11]
If an employee transferred from a contributory system to a noncontributory system, the member's accumulated contributions would be refunded to the employee. Former Article 73B, § 32(b)(1).[12] If the employee transferred from a noncontributory system to a contributory system, the predecessor to the current SPP § 37-203(f)(2) provided as follows:
 (c)(1) If a member transfers from a retirement or pension system where accumulated contributions are not deducted on all earnable compensation to a retirement or pension system where accumulated contributions are deducted on all earnable compensation, the member shall receive service credit for and in the amount of benefits in the system to which the member transfers. Upon retirement, the member's retirement allowance shall be reduced by the actuarial equivalent of the accumulated contributions with interest that have not been deducted. . . .
Former Article 73B, § 32(c)(1) (1981 Cum. Supp.) (emphasis added).[13]
The premise of the 1981 law appears to be that some parity could be achieved in the use of the concept of "accumulated contributions." In each instance where a transfer involved a contributory system on the "sending" or "receiving" end of the transaction, the formula takes into account the accumulated contributions — i.e., contributions plus interest — attributable to the period of the transferred service credit. That sum is either transferred to the new system, refunded to the member, or used to calculate a reduction in benefits in the new system. A member receives the benefit of prior contributions in the new system, receives a refund if the new system does not involve contributions, or is docked the amount of benefits associated with the missed contributions if the member made none in the original system.
There would be little parity — and much confusion — if a system could choose one interest rate for certain types of transfers — e.g., a low rate when refunding contributions — and another rate for other purposes — e.g., a high rate to compute the missed contributions of a transferee, thereby lowering the transferee's benefits. Such a conclusion appears antithetical to the evident purpose of the 1981 law to facilitate pension portability.
 2. 1994: Recodification of Transfer Provision in SPP § 37 — 203(f)(2)
The 1981 law has remained largely unchanged to the present.[14] In 1994, as part of a non-substantive recodification of the pension law in the State Personnel and Pensions Article, the statute was slightly reworded to assume its current form. Chapter 6, Laws of Maryland 1994.[15] The revisors rewrote the sentence that set forth the computation of the benefit adjustment. Instead of stating that the retirement allowance would be reduced by:
 "the actuarial equivalent of the accumulated contributions with interest that have not been deducted"
the reduction in benefits was now described as:
 "the actuarial equivalent of the accumulated contributions that would have been deducted if the individual had earned the transferred service credit under the new system, including interest on those contributions."
The revisors indicated that the new language was adopted for clarity. Chapter 6, Laws of Maryland 1994, Revisor's Note at p. 694. By substituting the phrase "would have been deducted if . . ." for "have not been deducted", the revisors clarified that the sum in question was hypothetical in nature and not an amount that actually should have been deducted. By moving the phrase "interest on those contributions" to the end of sentence, the revisors presumably sought to clarify that the interest in question was not an amount that "would have been deducted", but rather the interest that would have accumulated in the member's hypothetical annuity account with respect to the hypothetical contributions. As noted above, that interest rate has always been what is now referred to as the "regular" rate of interest.
 3. 2000: Modification of Process for State Employees and Teachers Pension Systems in SPP § 37-203.1
Substantial support for the view that the phrase "interest on those contributions" refers to the regular interest rate appears in legislation enacted in 2000 with regard to transfers involving the State Employees and Teachers Pension Systems ("EPS" and "TPS"). Chapter 362, Laws of Maryland 2000. In that year, the Legislature enacted a statute to address transfers to and from those systems, which were established in 1979 as noncontributory systems, but, beginning in 1998, required a 2% member contribution from salaries. Instead of modifying SPP § 37-203
for this purpose, the General Assembly enacted a new SPP § 37-203.1 to mirror the various transfer rules and indicate any differences. With regard to transfers from a noncontributory system to the EPS or TPS, the statute provided that:
 On retirement . . . the individual's retirement allowance shall be reduced by the actuarial equivalent of the accumulated contributions that would have been deducted during the period after June 30, 1998, when the individual was a member of the noncontributory system, if the individual had earned the transferred service credit under the State Contributory Employees' Pension System or the State Contributory Teachers' Pension System, including regular interest at the rate of 5% per year compounded annually.
Former SPP § 37-203.1(b)(3)(ii) (1997 Repl. Vol., 2000 Supp.) (emphasis added), enacted by Chapter 362, Laws of Maryland 2000 at p. 2064. The fiscal note to House Bill 348 (2000) explained that, as to this provision, involving a transfer to the EPS or TPS from a noncontributory system, "there is no impact on the [State Retirement and Pension System] because there is no change to current law." Thus, the drafters of the 2000 legislation understood that the phrase "interest on contributions" in SPP § 37-203(f)(2) referred to the regular interest rate payable on member contributions.
C. Administrative Practice
Since the enactment of the predecessor of SPP § 37-203(f)(2) in 1981, for transferees from a noncontributory State or local pension plan to a State contributory plan, the State Retirement Agency has itself calculated the mandated reduction in benefits by applying the regular rate of interest payable on member contributions by the transferee plan. This is the longstanding administrative construction of this provision by the agency charged with administering most of the retirement plans governed by the statute. "That construction is entitled to deference, and legislative acquiescence in that interpretation `gives rise to a strong presumption that the interpretation is correct.'"Morris, 319 Md. at 613.
 III Conclusion
For the reasons set forth above, it is our opinion that the phrase "interest on those contributions" in SPP § 37-203(f)(2) refers to the interest rate payable on member contributions — a rate that is often referred to as the "regular" rate of interest.
 J. Joseph Curran Attorney General
 Deborah B. Bacharach Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice*
[1] Certain types of transfers are excepted from the purview of Title 37. See SPP § 37-201(b).
[2] As used in SPP § 37-203, "contributory system" is defined at SPP § 37-101(d) as follows:
 "Contributory system" means a State or localretirement or pension system under whichmember contributions are deducted from all compensation.
[3] As used in SPP § 37-203, "noncontributory system" is defined at SPP § 37-101(j) as follows:
 (1) "Noncontributory system" means a Stateor local retirement or pension system under whichmember contributions are not deducted from all compensation.
 (2) "Noncontributory system" includes thepart of the Employees' Pension System of theState of Maryland and the part of the Teachers' Pension System of the State of Maryland that doesnot provide a contributory pension benefit underTitle 23, Subtitle 2, Part II of this article.
[4] Concluding that SPP § 37-203(f) was silent as to what rate of interestis to be used, that opinion advised the County that "the contributorysystems were left to decide for themselves how to determine the rate ofinterest." Letter from Edward J. Gilliss, County Attorney, to Brian J.Rowe, County Auditor (January 16, 2003).
[5] This provision does not apply to transfers from a State or localretirement system to a retirement system for a police or fire department, which are governed by another statute. See SPP § 37-204. Nor does it apply to transfers to or from certain State contributory systems, which aregoverned by SPP § 37-203.1. See SPP § 37-203(a).
[6] As we noted in a previous opinion, while the statute does not providefor a transfer of employer contributions from the old system to the newone, it "does not comparably require a reduction in the member's benefitat retirement to actuarially account for the deficiency in theemployer's contributions account." 76 Opinions of the AttorneyGeneral 358, 360 (1991) (emphasis in original).
[7] The phrase "actuarial equivalent" relates the amount of a member'saccumulated contributions to benefits and, in this context, an imputeddeficiency to a reduction in benefits. "Actuarial equivalence is a functionof the actuarial assumptions adopted by a retirement system — that is, theassumptions respecting interest rates, salary increases, rates of withdrawal, mortality, disablement, and retirement." 81 Opinions of theAttorney General 196, 204 (1996) (emphasis added);see also SPP § 20-202 ("actuarial equivalent" is an equivalent amount based on actuarialassumptions adopted by the Board of Trustees for the State Retirementand Pension System). State law does not mandate the particular actuarialassumptions that a system employs in determining actuarial equivalence, including the so-called "valuation interest rate." 81 Opinions of theAttorney General at 204 n. 8; see also SPP § 21-125(c)(2) (requiring theBoard of Trustees for the State Retirement and Pension System to adoptnecessary actuarial assumptions in light of experience studies conductedby an actuary at least once in each 5-year period).
[8] A prior opinion of this Office implicitly adopted that view when itstated: "the new retirement system must reduce the retirement allowanceof a retiree who transferred from a noncontributory to a contributorysystem at retirement by the actuarial equivalent of the accumulatedcontributions plus interest that would have been made by the memberunder the new system." 81 Opinions of the Attorney General 196, 206 (1996). The interest that a member "makes" under any system is theinterest added to the member's account in the annuity fund — the sameinterest that the member receives if the member withdraws accumulated contributions. That interest is computed by statute at the "regular" rate of interest.
[9] Employer contributions made on behalf of the employee in the transferor system were treated identically in each instance — thecontributions "with interest" were to be transferred to the transferee system, with the amount transferred to be determined by actuarialvaluation. See Former Article 73B, § 32(a)(2), (b)(2), (c)(2), (d)(2) (1981Cum. Supp.). These provisions concerning employer contributions werelater eliminated from the State retirement law.See 76 Opinions of theAttorney General 358, 361-62 (1991).
[10] See Former Article 73B, § 1(12), (13) (1978 Repl. Vol., 1981 Cum. Supp.). The phrase "accumulated contributions" had been defined in thisway in the pension law since at least 1941. Chapter 377, § 1, Laws of Maryland 1941.
In 1981, the statute provided two different meanings for the phrase"regular interest," depending on the context. Former Article 73B, § 1(12).However, with respect to "accumulated contributions" it had the samemeaning as in the current statute — the interest rate applied to membercontributions in the member's individual account in the annuity savingsfund.
[11] This provision now appears, as later amended, as SPP § 37-203(b)(2).
[12] This scenario is now covered by SPP § 37-203(e).
[13] The statute also included a fourth permutation — a transfer from onenoncontributory system to another noncontributory system. Former Article 73B, § 32(d).
[14] In 1992, the statute was recodified with only technical changes asArticle 73B, § 1-401(d). Chapter 131, § 2, Laws of Maryland 1992.
[15] It was originally denominated SPP § 37-203(e)(2) and later renumbered as SPP § 37-203(f)(2) as a result of an amendment of anotherportion of the statute. Chapter 362, Laws of Maryland 2000.
*Assistant Attorney General Rachel S. Cohen contributed significantly to the preparation of this opinion. *Page 232